DAVID EGBERT et al., Appellees, v. BENJAMIN EGBERT et al., Appellants.

1. **Estates of Decedents**: DOWER: HOMESTEAD: ELECTION BY WIDOW. A husband died leaving a will whereby his wife was given a life estate in the homestead and the rents derived from his other property for the support of the family. At the time of the husband's death the widow was in failing health, and continued to decline until her death, seventy-one days after the decease of her husband. About two weeks before she died, she made a will devising all of her property to her children, and gave notice to the executor under her husband's will, of an election to take her distributive share, but such share was not set off to her, and she continued to occupy the homestead up to the time of her death. *Held*, that the action of the widow did not have the effect of an election to take the homestead for life in lieu of her distributive share in her husband's estate.

| 85 | 525 |
| 87 | 518 |

| 85 | 525 |
| q89 | 391 |
| a89 | 553 |

| 85 | 525 |
| 98 | 40 |
| J98 | 49 |

| 85 | 525 |
| 105 | 374 |

| 85 | 525 |
| 107 | 266 |

| 85 | 525 |
| a109 | 706 |

| 85 | 525 |
| 116 | 384 |

2. ——: ——: ——: ——. The widow being entitled primarily to a third of her husband's estate, and not having elected to take a life estate in the homestead in lieu thereof, *held*, that she died seized in fee simple of one-third of said estate.

*Appeal from Clayton District Court.*—HON. W. A. HOYT, Judge.

MONDAY, MAY 23, 1892.

ACTION in equity for the partition of certain real estate. There was a decree as prayed by the plaintiffs, from which the defendant, Raymond Egbert, by his guardian *ad litem*, appeals.—*Affirmed.*

*J. Larkin,* for appellant.

The widow had the right to occupy and possess the homestead until it was otherwise disposed of according to law. Code, section 2007. She was not entitled to both homestead and dower. *Meyer v. Meyer,* 23 Iowa, 359; *Butterfield v. Wicks,* 44 Iowa, 310; *Stevens v. Stevens,* 50 Iowa, 491. Therefore she could not hold the homestead during her life, and at her death transmit to her heirs the right to have her dower admeasured in the premises in question. She could not transmit a right which she herself did not possess. Did she in any manner abandon her homestead right? She made no conveyance of her interest. She occupied the homestead until the time of her death; she took no steps to have her dower admeasured. It is true she signed a notice that she would claim her distributive share, but this notice amounts to nothing. Even if she commenced an action to admeasure her dower, and died before the admeasurement was made, the action would amount to nothing. *Burdick v. Kent,* 52 Iowa, 583; *Bradshaw v. Hurst,* 57 Iowa, 745; *Mahaffy v. Mahaffy,* 63 Iowa, 64. The continued occupancy of the homestead

by the survivor in the absence of an election to take a distributive share will be deemed an election to occupy as survivor. *Holbrook v. Perry,* 66 Iowa, 286. There can be no abandonment of the homestead by the survivor except by setting off his distributive share in the real estate of the deceased. *Darrah v. Cunningham,* 72 Iowa, 123; *Mobley v. Mobley,* 73 Iowa, 654; *McDonald v. McDonald,* 76 Iowa, 137; *Schlarb v. Holderbaum,* 80 Iowa, 394. Thus it has become a rule of property in this state, that, until his distributive share is set apart, the survivor, by occupying the homestead, must be regarded as having elected to take it. From this rule results the inevitable conclusion that, if the survivor occupies the homestead until his death, no matter how soon he dies after his wife, his occupation is an election. Having enjoyed the homestead during his life, no matter how short that life may have been, he has enjoyed all that the statute could give him if he had elected otherwise than by occupation. The widow could have had her share admeasured without ever leaving her dwelling. Her application could have been made at any time after the expiration of twenty days from the death of her husband. Code, section 2444. The appellees in this case, as supporting their position, cite and rely on *Mock v. Watson, Kendall v. Kendall,* and *Potter v. Worley.* They also cite as authorities in their favor *Cunningham v. Gamble,* 57 Iowa, 46; *Rittgers v. Rittgers,* 56 Iowa, 218; *McGuire v. Brown,* 41 Iowa, 650; *Blair v. Wilson,* 57 Iowa, 117, and *Whitehead v. Conklin,* 48 Iowa, 478. The first three cases they rely on are the same that this court holds in *McDonald v. McDonald* do not apply to a case of this kind; in *Cunningham v. Gamble,* the widow had not died in the occupancy and enjoyment of the homestead; *McGuire v. Brown* has no bearing on the case under consideration; *Rittgers v. Rittgers* is cited as an authority on the trust question; in *Blair v.*

*Wilson*, the wife owned a life estate in the homestead prior to the death of her husband, and there was nothing to show whether she had occupied the homestead otherwise than under the deed which gave her the life estate.   In *Whitehead v. Conklin*, there is nothing to show that the widow caused her homestead to be surveyed and platted, except the allegations of her petition.   But to survey and plat a homestad is not an election to take the homestead.   For to constitute even a valid selection the plat must be recorded. Code, section 1998.   Consequently this decision is not an authority in favor of the theory of the appellees. There are two rules announced by this court as to what constitutes an election to take the homestead. The rule established in *McDonald v. McDonald* we have fully considered.   But this rule is not so broad as the rule laid down in *Burdick v. Kent*, 52 Iowa, 583; in *Bradshaw v. Hurst*, 57 Iowa, 745, in *Darrah v. Cunningham*, 72 Iowa, 123, and in *Mobley v. Mobley*, 73 Iowa, 654.   In the first case, a case in which death prevented the survivor from having his dower set off after he had made application therefor, one of the grounds of the decision that there was no abandonment of the homestead, was that the distributive share of the survivor had never been admeasured.

*Noble & Updegraff*, for appellees.

There may be an occupancy of the homestead by the survivor until an actual setting off, without forfeiture of the right to the distributive share.   Only an election to take the homestead in lieu thereof will divest the distributive share.   Sections 2440, 2441, 2007, 2008. Neither the temporary occupancy pending the proper time to make an election, or the time necessary to procure a division, or a temporary occupancy under another and different title, or to accomplish some special desire of the husband expressed in his will, constitutes an

occupancy of the homestead as a homestead, or an election to take the homestead in lieu of her distributive share. *Whitehead v. Conklin*, 48 Iowa, 478; *Thomas v. Thomas*, 35 N. W. Rep. 693. The widow's interest in her husband's lands attaches before the husband's death, at the concurrence of the seizin by the husband and coverture by the wife. *Mock v. Watson*, 41 Iowa, 241. Of course this "vesting" is subject to be divested, as explained in *McDonald v. McDonald*, 76 Iowa, 137, either by a disposition by sale or by claiming and exercising her homestead rights in such a manner as to constitute an election. But this cannot be done "by the mere passive action" of the owner. *Kendall v. Kendall*, 42 Iowa, 464; *Potter v. Worley*, 57 Iowa, 66. "While the ruling" (*Butterfield v. Wicks*, 44 Iowa, 313, that the occupancy of the homestead may be regarded as an election), "is doubtless correct, occupancy is not necessarily to be regarded as evidence of such election." *Cunningham v. Gamble*, 57 Iowa, 46; *Holbrook v. Perry*, 66 Iowa, 286. The direction in the will that the widow should occupy the Monona home to entertain the testator's family, pending the final division, created a trust, and the occupancy under it was not a homestead occupancy. *Rittgers v. Rittgers*, 56 Iowa, 218; *McGuire v. Brown*, 41 Iowa, 650; *Blair v. Wilson*, 57 Iowa, 117.

GIVEN, J.—The questions presented arise out of the following facts: Elmer Egbert died October 26, 1886, seized of a certain farm worth about twenty thousand dollars, and certain lots, with a dwelling-house thereon, in the town of Monona, worth seven hundred dollars. For many years prior to April, 1886, Mr. Egbert and his family had resided on the farm. In March, 1886, he purchased the house and lots, and moved thereto in April, having rented the farm to his son for one year. Mr. and Mrs. Egbert, with their

family, occupied the house and lots up to the time of his death, and Mrs. Egbert and family continued to occupy the same up to her death, January 5, 1887. Mr. and Mrs. Egbert left surviving them their three children, David, Carrie and Benjamin. Mr. Egbert's son, Ross, by a former wife, died some time previous to the death of his father, leaving the appellant, Raymond Egbert, his only child, surviving him. Mr. Egbert left his last will as follows:

"I, Elmer Egbert, do make this my last will and testament: *First.* I direct that all my just debts be paid as soon as may be done without inconvenience to my family, or the sale of my real estate. *Second.* It is my will that my house and home in the village of New Monona, Clayton county, Iowa, shall be the home of my family under the supervision and control of my wife, Anna Egbert, and all members of my family who shall desire shall enjoy its benefit without charge or payment of board. *Third.* I direct and empower my executor to manage and control my real estate as I might do if living. *Fourth.* The rents of my lands shall be turned over to my wife for the maintenance and education of my family at such times and in such amounts as she shall deem necessary; and I direct my executor to loan any residue of said rents to the time of the final division of my estate. *Fifth.* My executor shall receive twelve and a half per cent. for the performance of the duties required of him under the will. *Sixth.* I appoint my son, David Egbert, executor. *Seventh.* I direct my executor to sell and convert into money all cattle, grain and hay of which I may die possessed. *Eighth.* It is my will that the furniture, bedding, library and piano, and all household goods, be exempted from sale or inventory, but remain for the use of the family. *Ninth.* It is my will that the span of horses, buggy, lumber wagon, harness, binder, mower, rakes, plows, and all farming imple-

ments become the property of my son, David Egbert, on paying to my estate the sum of three hundred dollars within one year after my decease."

About two weeks before her death Mrs. Egbert executed her last will, as follows:

"I give and devise to my daughter Carrie and to my son Benjamin the pianoforte and household and kitchen furniture contained in and about the house wherein I now live. *Second.* I give to my three children all the residue of my property of which I may die seized." At the same time she signed and gave to the executor a notice in writing, as follows: "To David Egbert, and to whom it may concern: Take notice, that I will claim my distributive share of the estate of my late husband, Elmer Egbert, deceased, of Monona, Clayton county, Iowa, as given me by statute of Iowa, and govern yourself accordingly.

"ANNA EGBERT."

At the time of Mr. Egbert's death Mrs. Egbert was in such poor health as to be unable to attend the funeral. She continued to decline from that time until her death, and was not during that time in a condition to have been removed to another house.

I. The only question involved in this case is whether Anna Egbert, at the time of her death, owned one-third of the real estate left by her husband. If she did, then her three children, David, Carrie and Benjamin, inherited her interest; if not, the appellant, Raymond Egbert, in the right of his father, Ross Egbert, is entitled to share equally with them therein. Under section 2440 of the Code Mrs. Egbert became entitled to have one-third of this real estate set off to her in fee simple, as her distributive share, upon the death of her husband. Under section 2007 she was entitled to continue to possess and occupy the homestead until it was otherwise disposed of; and under section 2008 she had

1. ESTATES OF decedents: dower: homestead: election by widow.

the right to elect to take the homestead for life in lieu of her distributive share in the real estate. The appellant's contentions are that the house and lots in Monona were the homestead, and that by continuing to occupy the same to the time of her death, Mrs. Egbert must be held to have elected to take the homestead for life in lieu of her distributive share in the real estate.

It is not clear what Mr. Egbert's intentions were as to this future home when he moved to Monona; but, as no question is made on that subject, we conclude that the house and lots were the homestead of the family at the time of his death. The only question is, whether Mrs. Egbert must be deemed to have elected to take that homestead for life in lieu of her distributive share in the real estate, because of having occupied it as she did. It is not a question of abandonment of the homestead, but simply whether, under the facts, she will be held to have elected to take the homestead. Several cases are cited wherein it was held that continual occupation of the homestead, in the absence of an election to take a distributive share, would be deemed an election to take the homestead. The facts in those cases are widely different from the facts in this. In most of them the occupation was for a long time, and accompanied by acts indicating such an election. The theory of those cases is that the facts justified the inference of an election to take the homestead. *Mobley v. Mobley*, 73 Iowa, 654, is most nearly in line with the facts of this case. In that the husband died July 5, 1886. The widow occupied the homestead until her death, December 25, 1886, having in the meantime leased the homestead for the term of her life, thus unmistakably indicating an election to take the homestead. *McDonald v. McDonald*, 76 Iowa, 137, is relied upon by the appellant. It is there said that the logical deduction to be drawn from the cases referred to "is that when the surviving husband or wife continues to occupy

and enjoy the homestead, this must be regarded, as long as he or she does so without having his or her distributive share set apart, as an election to take the homestead in lieu of a distributive share." It is further said: "Some certain and definite rule should be adopted, and we think the better construction of the statute is that until the distributive share is set apart, the surviving husband or wife, by occupying the homestead, must be regarded as having elected to take it." This rule, as applied to the facts of that case, and of those from which it is deduced, is correct, for in each the occupancy of the homestead had been for such a length of time, or there had been some act indicating an election, as to justify the inference of an election to take the homestead. True, Mrs. McDonald had given a mortgage on the undivided one-third of her husband's real estate, thus indicating her election to take a distributive share; but she had also held the homestead for a number of years without having her share set apart. The language of that opinion, as applied to the facts of that and like cases, is correct, but it announces the rule broader than was intended for, or will admit of uniform application to, all cases wherein the question of whether the survivor has made an election arises. The case under consideration furnishes an apt illustration of the necessity of qualifying this rule. By the statute and the will Mrs. Egbert had a right to occupy this homestead until otherwise disposed of. She had the right to occupy it for a reasonable time in which to make an election whether to retain such possession for life or take a distributive share. *Cunningham v. Gamble,* 57 Iowa, 46; *Thomas v. Thomas,* 73 Iowa, 657. Surely no presumption of an election arises from an occupancy for a reasonable time under this authority of the statute. To apply the rule without qualification to this case is to say that, although Mrs. Egbert was authorized by statute, by the will of her husband, and by the decisions of this

court, to occupy the homestead for a reasonable time without prejudice to her right to a distributive share, and although she occupied it but seventy-one days under circumstances that forbade her removal to another home, yet she must be held to have elected to take the homestead, notwithstanding her written notice to the contrary. The rule was not intended and does not admit of such an application. When the survivor has occupied after a reasonable time without having the distributive share set apart or otherwise making an election, the presumption of an election from the occupancy arises, and the rule applies; otherwise it does not.

II. Under the statute Mrs. Egbert became vested, upon the death of her husband, with the right to 2. one-third of his real estate in fee simple, or at her election, "to retain the homestead for life in lieu of such share in the real estate of the deceased." While, because of this right to elect, "it is not strictly correct to say that either right or estate vests in her absolutely upon the death of her husband," it is clear that the right to elect does. The primary right is to have the distributive share—the dower,—and the right continues until superseded and satisfied by an election to take the homestead in lieu thereof. Mrs. Egbert did not elect to take the homestead, and therefore died seized of the right to one-third in fee simple in her husband's real estate—a right that passed to her children under her will. It is contended on the authority of *Burdick v. Kent*, 52 Iowa, 583, that, as Mrs. Egbert continued to occupy the homestead up to her death without having her share in the real estate set apart, it did not pass under her will. In that case, the husband, after occupying the homestead for about two years, applied to have his share in the real estate set apart, and pending that proceeding, and one year after its commencement, died in possession of the homestead. His wife had devised the real

estate in trust for two of her grandchildren. It is said: "It being true that William P. Campbell continued to occupy the premises as his homestead until death, it is difficult to see how it can be made liable for the payment of his debts. But it is unnecessary to base the decision alone on such a thought." It is held that the mere election to take a distributive share is not sufficient; that, until the final order has been entered, the right to occupy the homestead continues; that, Campbell having died in possession of the homestead, the real estate, in the absence of a will, would have descended to his issue, exempt from his debts; but, as there was a will, it descended thereunder. This opinion does not sustain the broad claim that one entitled to a distributive share in fee simple in real estate forfeits all right thereto for himself and his heirs if he die before the same is set apart. It is an inheritable estate, and continues to exist until canceled by accepting the homestead in lieu thereof. Mrs. Egbert being seized of the right to have one-third of her husband's real estate set apart to her in fee simple, and never having surrendered or forfeited that right by election to take the homestead in lieu thereof or otherwise, we hold that the right did not die with her, but passed under her will.

The decree of the district court is AFFIRMED.