ORA J. BUCKLES, Appellant, v. ELLA MATSON et al., Appellees.

**HOMESTEAD: Abandonment—Burden of Proof.** When it is shown
1  that a building has once acquired a homestead character, the presumption prevails that such character continues, and he who claims to the contrary must affirmatively so show.

**HOMESTEAD:**   Abandonment—Occupancy of Home for Business
Purposes.   A house, occupied in its entirety by the owner as a home for himself and family, remains a homestead in its entirety, even though such owner employs a part of such house in the prosecution of his ordinary business.   (Section 2978, Code, 1897.)

PRINCIPLE APPLIED:   See No. 3.

**HOMESTEAD:**   Abandonment—Commercializing Part of Homestead.
Commercializing a portion of a homestead, with retention by the owner of a measure of control over the commercialized part for use in connection with the part actually occupied as a home, does not destroy the homestead character of the commercialized part. So held in a contest between the surviving wife and the heirs of deceased.

PRINCIPLE APPLIED:   A husband owned, and with his family occupied, a two-story brick building 20x50. There were four rooms on the second floor, consisting of parlor and bedrooms, and one room below, divided by a temporary partition. The family slept on the second floor. The lower room had a front and a rear door. The lower floor also had a front door, leading to a stairway approach to the second floor. This stairway approach afforded the only way to reach the upper floor. An inside door on the first floor led into this stairway approach. In the lower room, the owner carried on a restaurant. The cellar, reached only by means of a trapdoor in the rear of the partition, was used for the general storage of provisions. A well in the cellar was reached by a pump on the first floor, and from this, water was obtained for cooking, the water on the second floor not being suitable for such purpose. All cooking was done and all meals were eaten on the first floor. The husband died. Within some three months, the widow elected to take her homestead right in lieu of distributive share. For six months after the death of the husband, the widow continued the restaurant, and then discontinued it. Later, she rented, for six months, the front part only of the first floor, for a shoe and repair shop. Later, she rented, and at the time of the trial herein was renting, the same part for a cigar store. This latter renting was indefinite as to time. After closing the restaurant, the widow appears to have used both floors and the cellar the same as formerly, except as to the restaurant business. To reach the said pump, she was compelled to pass through, and did pass through, the part rented as aforesaid.

*Held*, the homestead embraced the entire premises at the date of the husband's death, and

*Held*, no part of the homestead was abandoned by the act of renting.

*Appeal from Lee District Court.*—H. BANK, JR., Judge.

FRIDAY, NOVEMBER 17, 1916.

THIS case involves the homestead right in a certain two-story brick building. On the death of the owner, the widow elected to take her homestead right in lieu of her distributive share. The question here is whether a portion of this building was in fact a homestead, and passed to her under election. The opinion states the facts. Decree below established a homestead right in the entire building in favor of the defendant, the widow. From this, the plaintiff appeals.—*Affirmed.*

*T. B. Snyder,* for appellant.

*E. C. Weber,* for appellee.

GAYNOR, J.—On April 15, 1912, C. D. Matson died, owning parts of two lots in the city of Fort Madison, on which is situated a two-story brick building, with a frontage on Pine Street of about 20 feet, and extending back about 50 feet, to an alley. Under this building, as constructed and used, is a cellar. From Pine Street, there are two doors, one serving as an entrance to the first floor, the other serving as an entrance to an approach to a stairway leading to the second floor. After entering from Pine Street, through the doorway leading to the approach to the stairway, there is another door, through which entrance can be made to the room on the first floor. The cellar is entered from the first floor by means of a trapdoor. In the rear is also a door through which exit and entrance may be made to the first floor. An enclosed stairway leads into the back part of the upper floor of the building. The first floor is partitioned. The partition is not solid, but extends up part way to the ceiling. The trapdoor, through which entrance to the cellar is made, is back of this frame partition. At the time of the trial, there was no outside cellar door, though there seems to have been one leading

from the alley into the cellar. This was subsequently closed by the city. There is a well in the cellar, and a pump on the first floor, through which water is taken for use in the building. The outside cellarway was closed, after the death of Mr. Matson.

The defendant is the widow of decedent, and administratrix of his estate. The plaintiffs are his children. The question here involves the extent to which the defendant widow is entitled to the occupancy of this building as a homestead. She elected to avail herself of her homestead rights, in lieu of dower. Sometime in April, 1910, C. D. Matson purchased this property, and, with his wife, took immediate possession. They opened a restaurant on the first floor. The parlor and bedrooms were on the second floor. There are four rooms upstairs. After taking possession, the deceased and his wife occupied the building until his death. When they moved, it seems they had household furniture, tables, counters, stove, and cooking utensils, and they were placed on the floor in the rear, back of the partition. The beds, bedding and parlor furniture were placed upstairs. They slept upstairs, and ate their meals downstairs. A lunch counter was placed on the south side of the first floor, at which customers were served. There was a well in the cellar, from which they used the water for cooking. All their provisions were kept in the cellar, and were reached through the inside trapdoor. In this cellar were kept all kinds of vegetables for use, not only for the family, but in the conduct of the restaurant. There was also an icebox in the cellar, which was used during the life of the deceased and while the restaurant was being conducted. The defendant did the work in the restaurant, and the deceased superintended the business.

During the time Mr. Matson lived, this restaurant was conducted under his management, with the assistance of his wife. When the restaurant was closed, they retired upstairs through this side door in the first floor. All the cooking for the family, as well as for the boarders, was done downstairs.

Back of this partition, deceased and his wife ate their meals. There was no way of reaching this pump that brought the water from the cellar, except from the first floor. The water from this well was, and is still, used for cooking purposes. It seems that there is city water on the second floor, but it cannot be used for cooking purposes. To get water from this well, it was necessary to go below to the first floor, either through the rear or side door leading from the hallway.

As said before, C. D. Matson died on April 15, 1912. His widow filed her election to take homestead in lieu of dower on July 13, 1912. She continued to run the restaurant and occupy the building, in the same manner in which it was occupied by her and her husband, until the latter part of October, 1913. The front part of the building was then vacant until about January. She then rented the front part to one Mr. Ball for about six months, for a shoe and repair shop, at $15 a month. In August, 1914, she rented the front part to one Mr. Johnson for a cigar business. Mr. Johnson was occupying the portion in front of the partition on the first floor with a cigar business, at the time the case was tried. The defendant, the widow, was living upstairs.

The evidence further discloses that, while there was city water upstairs, the defendant widow has been using water for cooking purposes taken from this well in the basement. It further discloses that she has never rented any portion of the building except the front part of the first story; that, in order to reach this well, she must proceed down the stairway from the upper story, into the hallway, through this door, into the front part of the building, and then back to the rear of the first floor; that she has been in the habit of doing this. We infer that the use of this water is necessary for cooking purposes.

Mr. Johnson, who occupies the front part of the first floor with a cigar business, testifies:

"There is a door that opens from the business part into this hallway, and it is necessary to go through the part of

the building occupied by me to get to the stairway, because there is no key to the back door.   There is a well in the cellar and pump on the first floor, and Mrs. Matson makes use of the pump and water, entering by the side door.''

She testifies that she used this water for cooking purposes; that the city water upstairs cannot be used; that, to get this water from the well, she had to go below, pass through the part occupied by Mr. Johnson, to the rear; that, to do this, she had to either enter by the rear door or front door or side door from the hallway.

''Mr. Johnson had no right to use and did not use the cellar.   The only portion rented to him was in front of the partition.''

This statement of the facts, as they appear in the record, may not convey a very intelligent idea of the manner in which this building was constructed and used, to one who is not familiar with the entire record, but we think sufficient of the facts are stated to enable one to understand the controversy here, and the law applicable to the controversy.   This is not a controversy between debtor and creditor, in which a creditor is seeking to hold a portion of this building as not exempt from execution under the homestead law, nor seeking to claim that, though a homestead at one time, it has been abandoned, and, therefore, subject to execution.   So the case is not considered from this viewpoint.

It is apparent from this record that this building was occupied as a home by C. D. Matson and his wife up to the time of his death.   The mere fact that they served guests in the front part of the lower floor of the building does not destroy the homestead character of the building.   The homestead character, having once attached, is presumed to continue until the contrary appears.   When a building has once become impressed with a homestead character, one who seeks to deprive it of that character has a burden of showing that it has been abandoned as a home.   Ordinarily, actual occupancy of

the building as a home is essential to give it a homestead character. Section 2978 of the Code, 1897, provides:

"It must not embrace more than one dwelling house, or any other buildings except such as are properly appurtenant thereto, *but a shop or other building situated thereon, actually used and occupied by the owner in the prosecution of his ordinary business . . . is appurtenant thereto.*"

The building we are now dealing with constitutes and is but one house—one house in which the defendant and her husband resided, in which they made their home. The build-

**1. HOMESTEAD: abandonment: burden of proof.** ing, therefore, was impressed with the homestead character. If any portion of this building has lost such character by reason of the manner of its use, the burden is on the one asserting it to establish the facts from which the disuse or abandonment may appear. As said in *Rhodes v. McCormick,* 4 Iowa 368:

"When an execution defendant shall use a particular building as a home, the whole of such building, in case of controversy and disagreement, will be presumed to constitute and be a part of, the homestead, until it is shown, by the party adversely interested, that some specific portion is not of the homestead character, and, therefore, not exempt."

As holding that a portion of one single building may be occupied as a home, and that the other portions of the building may not be impressed with the homestead character by such occupancy, and may, therefore, be subject to execution, see *Rhodes v. McCormick,* supra; *Mayfield v. Maasden,* 59 Iowa 517; *Johnson v. Moser,* 66 Iowa 536.

It is apparent that a building may be so constructed and used that the intent in the construction and use and occupancy is to devote a certain portion to family use as a home,

**2. HOMESTEAD: abandonment: occupancy of home for business purposes.** and other portions to use independent and distinct from the use and occupancy of that devoted to the home. The other, therefore, would not be appurtenant to the portion used and occupied as a home. But the mere fact that the occupant

of the home uses portions of the single building in the prose-
cution of his ordinary business, does not destroy its perti-
nency to the home. Inasmuch as the building is occupied as
a home, portions of the building may be devoted to the ordi-
nary business of the homesteader, and still be appurtenant
to the home, though not actually occupied for home pur-
poses. This, by virtue of the statute. See *Smith v. Quiggans*,
65 Iowa 637.

So we must hold that, because of the fact that C. D.
Matson and his wife occupied this building as a home, the
building became impressed with homestead character during
such occupancy; and the fact that he prosecuted his ordi-
nary business of restaurant-keeper in a part of the home, did
not separate the portion so occupied from the entire building.
It still remained impressed with a homestead character. Under
the statute, it must be considered as appurtenant to the home,
and, therefore, subject to the exemptions and rights that
attach to the home as such. As this would be true if it were
a separate building, a shop or other building, situated upon
the lot, it certainly is true as to a portion of the building to
which the homestead character has attached. This makes it
reasonably clear that the whole building must be considered
as the homestead of Mr. and Mrs. Matson up to the time of
his death. She continued to use and occupy it in the same
manner in which it was used and occupied, and for the same
purposes, following his death, up to the latter part of Octo-
ber, 1913. Up to this time, by reason of the occupancy and
use, the homestead character continued.

As supporting this holding, see *Wright & Co. v. Ditzler*,
54 Iowa 620. In this case, the building was two stories high;
in size, 22x40 feet, with a cellar. The upper story was occu-
pied by the family as a residence; the lower floor, as a store.
The cellar was used both in connection with the store and
for family purposes. The entrance by the family was through
the store. It was held that the entire building constituted
the homestead.

See also *Cass County Bank v. Weber,* 83 Iowa 63. In this case, a portion of the building was used for hotel purposes. The building in controversy was a two-story brick building. Part was used as a homestead; and part, as a hotel. The cellar and rooms on the first floor, used for the hotel, were also used by the family for the purpose of ingress and egress. The whole building was treated as exempt, under the homestead law.

In *Groneweg v. Beck,* 93 Iowa 717, the building in controversy was a two-story business building. The first floor contained a grocery. There was a cellar below the first floor. The upper story had an outside door and stairway. The family kept stores in the cellar. The cellar could be entered only through the store room. Held, both store and cellar were exempt from execution as a homestead. See also *Edmonds v. Davis,* 122 Iowa 561.

The statute fixes the maximum territorial limit of the right. Actual occupancy as a home impresses all within the territorial right with a homestead character. If any portion within the territorial right is to be relieved of its homestead character, the relief must be found in the manner of the occupancy. No part within the territorial limit of the right actually occupied as a home, or appurtenant to the home, or necessary to the proper use and enjoyment of the home, can ever, while such conditions remain, be deemed other than a part of the homestead. One thought runs through the cases, and that is: when the homestead character is shown to have attached to a building or a lot within the territorial limits, that character must be maintained and should be preserved, and no interference should be allowed with any portion, if the result would be to unreasonably interfere with the use and occupation of such homestead. Each case, therefore, must depend on its own peculiar facts. The rule that allows a single building occupied as a home, clearly within the territorial limits of the right to occupy it as a home, to be divided into portions by the courts, one part designated as a home-

stead, and another portion removed from the protection of the homestead right, is, as said in one of the cases, supra, of very doubtful propriety. It follows, therefore, that, when a building, being within the territorial limit of the right to acquire a homestead, is actually occupied as a homestead, it must clearly appear that the part sought to be separated can be separated without interfering with the full enjoyment of the portion of the building set aside as a homestead. It appears, therefore, clearly, that, up to the time of the death of Mr. Matson, no creditor could, under execution, have taken and sold any portion of this building, without unreasonable interference with the use and occupancy of the homestead.

This brings us to a consideration of the conditions existing since his death. Although the plaintiff has not pleaded an abandonment of the homestead by the widow, after her election, but has sought to recover not only the rent received by her from Mr. Ball and Mr. Johnson, but the reasonable rental of the premises during the time it was occupied by her subsequent to the death of her husband, we have viewed the case as if such plea were presented; and, under the authorities hereinbefore presented, we find that to take any portion of this building to which the homestead character had attached, and was attached at the time of her election, would be to unreasonably interfere with the enjoyment of that portion actually occupied by her at this time. When she made her election, this was the homestead of her husband. The mere commercializing of a portion of the homestead, while she retained the commercialized portion for her use, in connection with the enjoyment of the part actually occupied by her as a home, does not destroy the homestead character of the commercialized part. To turn it over to these plaintiffs—and, if they succeed, that is the legal effect of it—is to deprive her of access to the cellarway, to the water that appears essential to the enjoyment of the home, the right of entrance to the rear portion of the first floor, which has not been com-

3. HOMESTEAD: abandonment: commercializing part of homestead.

mercialized, and, we think, would unreasonably interfere with the enjoyment of what she took when she elected to take the homestead in lieu of her distributive share. It does not appear that the renting to Mr. Johnson was for any definite time, or that there was any fixed purpose in her mind to abandon any portion of that which she had acquired by her election, and we do not think she did.

On the whole record, we think the cause ought to be affirmed, and it is—*Affirmed*.

EVANS, C. J., LADD and SALINGER, JJ., concur.