SARAH JANE JOSLIN, Appellant, v. LOVINA BEAM et al., Appellees.

**HOMESTEAD: Acquisition—Evidence.** Evidence reviewed, and
1 *held* that the property in controversy was a homestead.

**HOMESTEAD: Surviving Spouse—Dower or Homestead Occupancy.**
2 Long-continued occupancy of a homestead by a surviving spouse
tends to establish an election by the spouse to take such occu-
pancy in lieu of the distributive share; but such is not the
effect if such occupancy is referable to a deed which gave such
spouse the right to so occupy.

*Appeal from Jones District Court.*—F. O. ELLISON, Judge.

DECEMBER 13, 1919.

PLAINTIFF brought this action in partition, claiming to
be the owner of a one-third interest in two certain lots,
containing 20 acres, and that defendant Lovina Beam was
the owner of an undivided two thirds. Defendants claimed
that the 20-acre tract was the homestead of plaintiff and
her deceased husband, and that plaintiff had, by occu-
pancy, elected to take her homestead rights therein. Other
matters are set up in the pleadings, but those just stated are
the only ones argued. The trial court held that plaintiff
had elected to occupy the 20 acres for life, in lieu of her
one-third interest, and was, therefore, not entitled to one
third, and dismissed her petition. The plaintiff appeals.—
*Reversed.*

*Remley & Remley,* for appellant.

*B. E. Rhinehart,* for appellees.

PRESTON, J.—Appellant contends that the burden of
proof is upon the defendants. The trial court so held, and
appellees assumed the burden, and do not contend other-

wise in this court.   Appellant further con-
1. HOMESTEAD:   tends that defendants have the burden to
   acquisition:
   evidence.    show that the property in question was a
homestead at the time of the death of plain-
tiff's husband, and, if it was in fact a homestead, that plain-
tiff elected to use it for life, in lieu of her one third.   It
is argued by plaintiff that the property was not a home-
stead, because plaintiff's son and family were living on the
premises when the father died, in 1887, renting of the father,
and the father staying with him; that plaintiff went to her
daughter's that spring, because she couldn't get along with
her son's wife, and that plaintiff stayed with the daughter
from April until August, when the father got sick; that,
the first two years after the death of John W. Joslin, the
son and family occupied the premises, and paid no rent, but
that the son paid the funeral expenses; that, after the
death of the husband, plaintiff went to work for her sister-
in-law, and worked by the week for a year: but it appears,
and; indeed, plaintiff herself so testified, that the son lived
in the house with them, the year before her husband died.
The plaintiff and her husband lived upstairs, and the son
and his family downstairs, and the son and his family
lived in the house two years more after her hus-
band died.   She says further that, after her husband
died, in August, 1887, she continued to live in and occupy
the same home, and did, off and on, until about the year
1908, when she rented it.   There is other evidence on the
subject, and we think the evidence shows that the property
was the homestead of plaintiff and deceased, at the time
of his death, and that deceased and his family lived on the
20 acres from the time of the deed, in 1868, until the death
of John W. Joslin, in 1887, so that the only question is
whether plaintiff has elected to use the premises in lieu of
her one third.  Both parties concede in argument that
this is the main question presented.   John W. Joslin, the

plaintiff's husband, died intestate, in August, 1887, owning in fee simple, as both parties now concede, and as they did concede on the trial, the two lots in controversy. He left surviving plaintiff, his widow, a son, John G. Joslin, and the defendant Lovina, as his only heirs at law. The plaintiff is 82 years old, and cannot read writing or write, though she says she can read print some. When John W. died, he had no property except this 20 acres, and no administrator was appointed. In 1868, J. G. Joslin, father of John W., deeded to his son, the said John W., 40 acres of land, which included the 20 acres in controversy, which deed contained the following:

"Amounting in all to 40 acres, more or less, to have and to hold the aforesaid bargained and granted premises unto him the said John W. Joslin and his heirs and assigns forever, and the same is upon the express condition, that said John W. Joslin shall in no way sell, convey or dispose of said premises aforesaid while he shall live, but that the same shall, after his death, descend to his heirs only, for their own purpose, use and benefit forever."

As said, it is conceded that this deed conveyed an absolute title in fee; but the interpretation or understanding of plaintiff and the other parties interested, of the language

**2. HOMESTEAD: surviving spouse: dower or homestead occupancy.** in the deed above set out, has an important bearing on plaintiff's occupancy of the 20 acres in controversy, and on her intention. In 1878, John G. Joslin, son of John W., and grandson of J. G. Joslin, deeded, by warranty deed, the undivided one half of the 20 acres in controversy to his sister, defendant Lovina Beam, which deed recites:

"This conveyance made subject to the life estate of my father and mother, John W. and Sarah Jane Joslin."

This was nine years before John W. died, and the evidence shows that, at the time this deed was executed, the plaintiff and her husband, defendant Lovina Beam, and her

brother John G., were present. Doubtless, the purchase price paid by defendant Mrs. Beam to her brother was based upon the condition that plaintiff and her husband should have a life estate in the one-half interest being conveyed. In 1879, plaintiff and her husband, John W. Joslin, and defendant Lovina Beam, then Joslin, and her brother John G. Joslin, joined in the execution of a mortgage on the 20 acres. In 1883, plaintiff and her husband, John W., and the two defendants herein, executed a mortgage to another party on the same premises. In 1893, after the death of John W., plaintiff and the two defendants joined in the execution of a mortgage to one Ellison, and still another to Heitchen. In 1896, the same parties executed another mortgage on the property. In 1900, the two defendants herein executed a mortgage on the property, and the mortgage recites that it is subject to the life estate of Sarah Jane Joslin. These mortgages have all been satisfied or canceled, the abstract showing the land clear of liens. It is contended by appellant that her occupancy of the premises after the death of her husband was intermittent, and the evidence shows that it was, somewhat; while defendants argue that it was continuous. It appears that plaintiff worked out, away from home, a part of the time. She went to New York several times, and on some of these trips stayed for a considerable time, at one time two and one-half years, and returned from that trip about May, 1917. But she received the rent for the property most of the time when she did not herself occupy it. There was a space of a few years when the defendant and her husband and plaintiff occupied the premises together, and, as we understand the record, no rent was paid for a part of this time, except to make a home for plaintiff, as one of the defendants puts it. About 1893, she went to Kansas for a time, where defendants were, or had been, living. On their return, defendants occupied the premises for the years 1894 to 1897, without

paying rent. In 1887, before her husband's death, plaintiff went to Kansas, for three or four months, and was there when notified of her husband's sickness, when she returned. Plaintiff made her home with them, when she was not working out. Defendants put some improvements on the premises. About 1913, or some two years after, plaintiff, in writing, leased to defendant A. J. Beam, the husband of Lovina, who sold the house on the premises, and it was moved away. Since that time, there has been no house on the premises, and A. J. Beam has had the use of it under the lease, paying plaintiff $60 a year as rent therefor. Conceding, then, that plaintiff has either occupied the property or controlled it, and received the rent, the question is whether, by so doing, she has, under all the circumstances, shown that she elected, and that it was her intention, to use the property as a homestead or whether her occupancy and control were fairly referable to the deed before set out, and her understanding and interpretation of it. We are satisfied from the evidence that the parties, including plaintiff, understood that plaintiff and her deceased husband had a life estate in the property, and that plaintiff's occupancy and control were intended by her to be thereunder, and that this is not inconsistent with her claim to one third. We shall refer to some of the circumstances which so show.

The deed from John G. to his sister, the defendant, shows that he and the defendant both so construed it, and defendant Lovina purchased her brother's interest, subject to the life estate of both her father and mother. A clause in one of the mortgages before referred to tends to so show. The defendant Lovina Beam testifies:

"Q. You knew your mother was receiving the rents for this 20 acres? A. Yes. Q. You permitted her to do it? A. She had a right to it, as it was her place. Q. You knew she had certain rights to this 20 acres, by reason of a deed from your father, or from your grandfather to your father?

A. They always talked she had a life estate in it, her and father. Q. You understood what rights she had came from the deed from your grandfather to your father? A. Yes, sir. Q. Now, do you know what the understanding was, as you understood her possession and her possession as to what her rights were? A. Her rights were life estate, and I had no rights at all till after she was through with it. That was her position, as I understand it. Q. Did she ever say anything to you about what her rights were? A. Yes, talked in the house, during the time about the time the deed was being made to my father, and supposed to her, too. They had a life interest. We did not expect anything until she was through with it. Mother and I have not been on speaking terms since 1915."

The defendant A. J. Beam testifies that plaintiff told him, in 1887, before her husband's death, that she had a life estate in this 20 acres. Plaintiff testifies that her daughter, Mrs. Beam, at one time wanted to know if she, plaintiff, would sell the 20 acres, and put the money in a big farm, and that plaintiff said, "No, I will never sell my home." This conversation is denied by Mrs. Beam. Plaintiff further testifies:

"My husband's father gave my husband 40 acres of land for his share of his estate; Lovina got 10 acres of it, and John got 10 acres. Q. Did you know you had a right to these premises for your life, in a deed from your son to your daughter? You knew that? A. Why, yes. Q. You knew of a deed being made out between your son John and your daughter Lovina? A. Yes. Q. State whether or not you knew of any provisions made for your staying on these premises during your lifetime, in a deed from your son to your daughter. A. I always thought, and carried that idea, that the 20 was my home until I got through with it."

Plaintiff testifies she did not know the provisions in

the deed just referred to. But it appears she had heard of them.

"Q. Did you understand you owned a third of this 20? A. Yes, I always thought I did. Q. Did you ever hear Lovina make any claim that you did not own one third of it? A. No. Q. Did she ever make any claim to you that you did not? A. No. Q. Do you claim one third of this 20? A. I do, and always have."

The defendants testify that the first they heard of plaintiff's claiming a third was when the original notice was served. In speaking of the life lease executed by her to defendant A. J. Beam, in 1911, plaintiff says:

"The contract, or lease, was not made the way I wanted it at all. It was not done the way I said it should be done. When it was written up, I spoke to them, and said that $60 will keep me, as long as I am able to work. Mr. Beam spoke up and said, 'I will take care of you, the time I am on your place. I will take care of you.' That ought to have been put in the writing, and I thought it was. I never found out that it was not in until last winter, when my granddaughter wanted to look at it, and told me. This is the first I knew that it was not in the lease. This was shortly before this suit was commenced. I wanted it that he was to pay the taxes and keep up the fences. I have no property except what I receive from this 20."

No reformation of the contract is asked, however. Plaintiff also testified:

"I had pneumonia lately. I sent for my daughter to come and see me, but she did not come. I have only $10 left. I haven't any place to stay. When I came from New York, last May, Mrs. Houlette wrote to her father in New York that her Aunt Lovina would keep me through the day, but would not keep me over night; that I would have to go to the poor house. I didn't go there, because I didn't want to be turned out of the house."

The written lease of 1911 from plaintiff to A. J. Beam provides, among other things, that the rental is an annual rent of $60 and taxes, and that plaintiff "may use any or all of said premises." Defendant Mrs. Beam testifies that, in the year 1898, her husband paid cash rent, and plaintiff occupied the premises. No witness testifies that plaintiff said she was occupying the premises, or electing to occupy the homestead for life, in lieu of her dower. Up to the commencement of this suit, appellees claimed, or at least understood, that she was occupying the property under the deeds, which they all supposed gave her a life estate. Though concededly they were all mistaken as to the legal effect of the deed executed in 1868, still, the fact that all the parties otherwise understood the instrument, with the other circumstances in the case, has, as before stated, an important bearing on the character of her occupancy and on her intention. There may be other circumstances than those referred to, bearing upon this question, but we shall not go into further detail.

Appellant contends that appellees also recognized that plaintiff was claiming such a life estate by taking a lease in 1911, after plaintiff had abandoned the property in 1908 and went to New York; and the further circumstance is relied upon, as showing that plaintiff claimed her rights under the law and the deeds, that she leased the land for life, in 1911, and received rent after she ceased living on the land. The argument, in brief, at this point, is that the fact that plaintiff has not occupied the land since 1908, and leased it for life in 1911, is a circumstance showing that she was claiming a life estate without occupancy, which could only be under her ownership of one third, and the life estate reserved or excepted for her benefit in the half interest in the deed from her son to her daughter; that the circumstances are inconsistent with an election to occupy as a homestead, and that they show no election; that, had

plaintiff elected to occupy the home for life, she would not have had a right to enter into the lease; that, when the wife's homestead rights, by abandonment, or in any other manner, are at an end, the property passes by the ordinary rules of descent. They cite *Butterfield v. Wicks*, 44 Iowa 310, 313; *Hornbeck v. Brown*, 91 Iowa 316. They argue, too, that the right to possess and occupy the homestead does not confer title, and cite *Meyer v. Meyer*, 23 Iowa 359, 370.

It is further argued by appellant that plaintiff had a right, under the deed from her son to the daughter, to occupy one half of the premises for life, and that this right was recognized and never questioned by defendant until this suit. They contend further that, as a tenant in common, she had a right to occupy the premises just as she did, and that she had an absolute right to an undivided one third, and that, if her occupancy could fairly be based on some right other than the right to occupy the homestead for life, in lieu of her one third, then there is no inference of an election to claim a homestead. The cases in support of these propositions will be cited later in the opinion. Appellees concede in argument that, under the case of *Wold & Olson v. Buckholtz*, 105 Iowa 375, cited by appellant, tenants in common have equal rights as to possession, and that the possession of one may be the possession of all; but they say that the trouble with appellant's position in this respect is that plaintiff's claim was absolute, because the defendant Mrs. Beam testified, at one time in her examination, that plaintiff told her that she had no right there. It is true that defendant did so testify; but, taking the evidence of Mrs. Beam all together, and all the evidence, it is quite clear that plaintiff did recognize that Mrs. Beam had an interest in the property as an heir, and under the deed from her brother, subject to what they all supposed was a life estate in plaintiff under the first deed. It is claimed by appellees, and conceded by appellant, that the

case is ruled by Sections 2007 and 2008 of the Code of 1873. Appellees' proposition is that, if the surviving spouse occupy the homestead for more than 10 years, without taking any steps to have the distributive share set aside, the presumption of an election to take a homestead arises, and that this presumption will prevail, in the absence of an election to the contrary. They cite *Shelangowski v. Schrack,* 162 Iowa 176; *Huit v. Huit,* 122 Iowa 338; *McDonald v. McDonald,* 76 Iowa 137; *Schlarb v. Holderbaum,* 80 Iowa 394; *Egbert v. Egbert,* 85 Iowa 525; *Zwick v. Johns,* 89 Iowa 550; *Robson v. Lambertson,* 115 Iowa 366, 367; *Stoddard v. Kendall,* 140 Iowa 688, 693.

It is true that, ordinarily, an election to take the homestead right is evidenced by the continued occupancy of the premises as a homestead by a surviving spouse and family, but this is not conclusive. We said, in *Gray v. Wright,* 142 Iowa 225, 227:

"It is true that continued possession of the homestead by the widow is evidence tending to show an election to take homestead rights, instead of a statutory share; but it is not conclusive, and, if the testimony as a whole makes it reasonably clear that, while remaining in possession, she is always asserting an interest in the title, as distinguished from the mere right of life occupancy and use, the presumption or inference derived from the fact of continued possession is overcome. This is especially true where, as in this case, the homestead is all the property left by the deceased husband, and the heirs at no time demanded a partition or an accounting for rents and profits."

Appellees rely most upon *Huit v. Huit,* supra, but an examination of that case shows that there was little, if anything, in the case except the occupancy, and the widow did not claim any other right than to occupy as a homestead. Such was the situation in some of the other cases before cited. The primary right of a surviving spouse is

for a distributive share. *Bosworth v. Blaine,* 170 Iowa 296, 299; *Coleman v. Bosworth,* 180 Iowa 975. An election by the survivor must be made, in order to retain a homestead; otherwise, the survivor takes a distributive share. *Bosworth v. Blaine,* supra.

Without further discussion, we think, as we have already said, that plaintiff's possession may fairly be referable to the first deed, or both of them, and that it is not shown that she intended to, or that she did, by such occupancy, elect to take homestead, in lieu of her distributive share. The following cases sustain our conclusion: *Hemping v. Hemping,* 141 Iowa 535, 536, 538; *Robson v. Lambertson,* 115 Iowa 366, 369; *Bosworth v. Blaine,* supra. It follows, then, that the decree of the district court must be, and it is,—*Reversed.*

LADD, C. J., EVANS and SALINGER, JJ., concur.