BELLE GERATY et al., Appellees, v. ANNABEL BARBER, Appellant.

**HOMESTEAD: In Lieu of Distributive Share—Election. Evidence** of acts, conduct, and declarations attending long-continued possession of a homestead, following the death of the owner, reviewed, and held to establish an election to take homestead occupancy, in lieu of distributive share.

*Appeal from Howard District Court.*—C. N. HOUCK, Judge.

MARCH 15, 1920.

ACTION in equity, to determine the title and right of possession of two lots, together less than half an acre, in the city of Cresco. The defendant, who is the widow of plaintiff's father, claims a one-third interest in the property, under the will of her deceased husband, who, she claims, had not elected to take a homestead interest in the property, but that he was entitled to his distributive share, of one third. Plaintiff's claim is that her father, defendant's deceased husband, had elected to take his homestead right in the property, the title to which was in her mother, who had deceased prior to her father's death, and that plaintiff, as the sole heir, is the owner of the property. The trial court decreed that plaintiff was the absolute owner of the premises, quieted the title in her, as prayed, and issued a writ of possession. The defendant's cross-petition, in which she asked a partition of the property, was dismissed. The defendant appeals.—*Affirmed.*

*E. W. Cutting,* for appellant.

*McCook & Lyons* and *W. L. Barker,* for appellees.

PRESTON, J.—There is little, if any, controversy as to the law of the case, although each side cites authorities where, under the facts of the cases cited, it was held either that there had or had not been an election. We have a case which is largely a question of fact, whether J. B. Barber, the surviving husband, took his distributive share, or whether he had elected to occupy the premises under his homestead right. It is conceded that the right to a distributive share is the primary right of a surviving spouse, and that the burden is upon plaintiff to show an election to take homestead for life, in lieu of such share.

Plaintiff alleged that the property was owned by Rose Barber, who died intestate, August 16, 1913, leaving a husband, J. B. Barber, surviving, and the plaintiff, as her only

heir; that, after the death of his wife, J. B.. Barber contin-
ued to occupy the real estate as his homestead until the date
of his death, June 20, 1917, and elected to and did occupy it
as his homestead, in lieu of his distributive share. Defend-
ant admits the foregoing allegations, except as to the allega-
tion as to election to occupy as a homestead, which she de-
nies; and says that, on November 4, 1915, J. B. Barber mar-
ried this defendant, and that he died testate, and that he
willed all of his property to defendant.

Rose Barber acquired the property in 1888. The title
to the entire property was in her. She and her husband
resided on the premises 30 years or more, and did not re-
side elsewhere or occupy any other home during that time.
She died in this property. After her death, J. B. Barber
continued to occupy some portion of the larger dwelling,
and collected rent for the entire premises, until his death,
and died therein. After the death of his wife, he occupied
no other premises. After J. B. Barber married the defend-
ant, they together occupied a part of the dwelling, and con-
tinued to collect rent for all the premises that he did not
occupy, until he died. When Rose Barber acquired the
property, there was but one house on it, a single house;
but she and her husband occupied it as their homestead.
Later, that house was changed into a double house, and since
the change, one half has been rented to people, for the pur-
pose of having an income from it. There is also a small
house on the lots, which was moved from the farm, and
rented for the purpose of income. There is a barn, situated
partly on each lot, and a shed, on the back part of the prop-
erty, which were used by J. B. Barber for his horse, tools,
kindling, etc. A witness testifies that the west side of the
larger house comes right to the edge of the next lot, and
that the east side is built almost to the lot line.

"A good many of the outbuildings is either on one side
or the other of the center, and there are apple trees planted

each way; in fact, it is all one property. In the larger house, there is a room below and above on the front of the house that is narrower than the whole width of the house. This room opens into both places. There is a single stairway, leading down into the cellar and up into the second story."

The east part of the larger house is arranged for one family, and the west part for another family. There was a stairway leading to the attic, which went through one of the sleeping rooms of one of the tenants. The tenant had half the attic, and J. B. Barber went to the attic as he liked. At the time Rose Barber died, she and her husband were, and had been, living in the east side of the larger house, and the tenant in the west side. About two months after she died, another tenant moved into the east part of the house, and lived there two and a half years, and then lived on the west side one year. During a part of this time, J. B. reserved one room to live in, and also a room upstairs, to store his things in; and, while occupying the one room reserved, he used the tenant's kitchen, to get hard water, and the cistern, to get soft water. While this tenant occupied the west side, J. B. Barber and the defendant occupied the east side of the house. While J. B. was thus occupying the premises, he repeatedly stated to different ones that it was his home, and that he intended to live there as long as he lived. To one, he said repeatedly that he wanted to keep his home. To another tenant and his wife, he said "that it had always been his home since he bought the place, and always wanted to make it his home as long as he lived; he wanted to make it his home, and use a part of it, at least. He said he would always make it his home." To another witness, he stated, "This is my home, just as long as I live." To another: "That it was his home, and he was not going to break it up. He calculated to make that his home until his death. He wanted to live there until he died." To

another: " 'I will never leave that home while I live;' that he intended to die on the premises, and he did so die there; Mr. Barber told me when he was through with it, of course that place belonged to Belle Geraty." To the lawyer who drew his will, Mr. Barber said, in substance: " 'I have not much property to will; I have the shop and the house up the street, and my homestead here.' He didn't explain that he had a share, or that he had an absolute estate, or an estate by possession. No explanation of any specific nature was made." Mr. Barber proposed to the lawyer, in drawing the will, that the property in question should be described therein; but this was not done, because the description was not then at hand. There is evidence that Mr. Barber knew that plaintiff was claiming that he had only a life use of the property; that he told a witness in Minneapolis that his daughter was questioning his right to any more than a life use, and that she was resisting his claim to an undivided one third. He had the right to bring a partition suit, notwithstanding plaintiff's resistance to his claim. This he did not do, but continued to occupy the premises. We have attempted not to go into detail, and there may be some other circumstances; but, under the record, and from the circumstances detailed, which are substantially undisputed, appellees contend that, notwithstanding defendant's evidence as to contrary declarations by J. B. Barber, it was his intention to elect, and that he did elect, to occupy the premises as a homestead, in lieu of his distributive share.

On the other hand, there is evidence that Mr. Barber claimed to other witnesses that he owned a one-third interest; to others, he appears to have claimed to own the entire property. As said, he collected the rents for the entire property, after his wife died. In 1915, and again in February, 1917, Mr. Barber listed the property in question with the assessor as his property, and made affidavit thereto, and taxable as such, and that it was assessed to

him.  He appears to have been making different claims: first claiming that all the property was his own, and at other times, claiming a one-third interest, and repeatedly stating that he intended to make it his home as long as he lived; and he did, in fact, occupy it for the entire time from the death of his wife until his own death.  Under repeated holdings of this court, he could not take both homestead and distributive share in his wife's estate.  It is argued by appellant that, because Mr. Barber received all the rent, that fact shows that he was claiming a one-third interest as his distributive share.  It is, of course, a circumstance tending to show that he made some claim to the property, but it did not constitute a specific claim to one third.  His receiving rent for all of it, while occupying a part of it, is not, we think, inconsistent with a claim of homestead.  His receiving rent for all would not divest the homestead right.  We shall not go into the details as to defendant's evidence.  The substance of it has already been referred to.  There are circumstances in connection with the evidence of the defendant and some of her witnesses which affect somewhat their credibility.  On the whole record, we are satisfied that the greater weight of the evidence is with the plaintiff, and that she has sustained the burden, and shown that J. B. Barber did elect to take his homestead right, and that all his acts and conduct, with the declarations and other circumstances, are inconsistent with the claim of any other estate in the property.

It is contended by plaintiff that the construction of the double house on the west part of the lot was such that it could not be divided, as neither side contained a complete dwelling property, but each was dependent upon the whole, there being but one stairway up and down, and a distributive share in this property could not be set off, so as to constitute a residence property not depending upon the remain-

der. On this they cite *Buckles v. Matson,* 178 Iowa 310; *Edmonds v. Davis,* 122 Iowa 561, 562; *Cass County Bank v. Weber,* 83 Iowa 63; *Groneweg v. Beck,* 93 Iowa 717. Furthermore, Mr. Barber had the right to occupy all of it, though he did not do so at any one time. But the evidence shows that he did so at different times, by occupying one part at one time and other parts at other times.

Appellant relies largely on *Bosworth v. Blaine,* 170 Iowa 296; but we think it may be readily distinguished, when we consider the different state of facts. In that case, the surviving spouse was seeking to claim a homestead right, in order to avoid a judgment, wherein it was sought to hold his distributive share; and, against his claim and testimony that he was claiming a homestead, it was held that he had not made such an election. It was shown that he had never unequivocally asserted a homestead right in the land, but, on the other hand, he had an arrangement with his children by which he received the rent, which was applied, in part, for his support, and the balance on a mortgage on the land; that he had mortgaged his undivided one third of the land; that he had repeatedly made efforts to sell the land. The instant case may also be distinguished from the case of *Joslin v. Beam,* 187 Iowa 1090. In that case, the possession of the survivor was referable to a prior deed, giving the right of possession. It is true, as contended, that continued occupancy of the premises as a homestead is not conclusive of an election to take the homestead. *Gray v. Wright,* 142 Iowa 225, 227; *Joslin v. Beam,* supra. We said, in the *Gray* case, that, ordinarily, an election to take the homestead right is evidenced by the continued occupancy of the premises as a homestead. In the instant case, there are circumstances, in addition to the occupancy, which, as we have said, show an election. We think the finding and de-

cree of the trial court were right, and in accord with the evidence and law.   It is, therefore,—*Affirmed.*

WEAVER, C. J., EVANS and SALINGER, JJ., concur.