## BURKE v. BARRON *et al.*

DOWER. The land was located with a military land warrant, issued by the United States to O. M. B., the husband of complainant. The warrant was sent from Ohio to M., of Johnson county, Iowa, by one E., with directions to sell it. It was not assigned, and was not, by the law, in force at the time, assignable. M. sold it to to J. B., one of the respondents, on a credit, and located it for him on the land, in the name of O. M. B., with the understanding that E. should make a deed in fee simple when the money was paid for the warrant, according to agreement. M. did not know O. M. B., and did not act for him in the business. After the location of the warrant by M., O. M. B. executed to E. a title bond for the conveyance of the land to him, on condition that E. should, by a day named, pay to O. M. B. the sum of $160,00 specified as the price agreed therefor. O. M. B. died January 16, 1853. J. B. obtained a decree against E. for a conveyance; and afterwards ascertaining that the legal title was in the heirs of O. M. B., who had died in the meantime,

he obtained a decree against the administrator and heirs of O. M. B., for a conveyance by them.   *Held,* That the widow of O. M. B. was entitled to dower in the land.

A widow's right of dower in the real estate of her husband accrues at the time of his death, and becomes a vested right before assignment, which the general assembly, by a subsequent statute, can neither reduce nor take away.

The act entitled " An act to amend chapter eighty-three of the Code," approved January 24, 1853, by which section 1394 is repealed, does not refer to, and include, rights of dower accrued previous to its enactment.

*Appeal from the Scott District Court.*

FRIDAY, APRIL 8.

DOWER. The land in which dower is claimed, was located by virtue of a military land warrant, issued by the United States to Ora M. Burke, the husband of the plaintiff. This warrant was sent from Ohio to J. W. McCaddon, of Johnson county, Iowa, by one Easton, with directions to sell it. It was not assigned, and was not, by the law in force at the time, assignable. McCaddon sold it to Barron, on a credit, and located it for him on the land in question, in which dower is claimed, in the name of Burke, the warrantee, with the understanding that Easton, should make a deed in fee simple, when the money was paid according to agreement. He did not know Burke, and did not act for him in the business.

After the location of the warrant by McCaddon, Burke executed to Easton a title bond for the conveyance of the land to him, on condition that Easton should, by a day named, pay to Burke the sum of $160,00, specified as the price agreed therefor. Barron obtained a decree against Easton for a conveyance; and afterwards, ascertaining that the legal title was in the heirs of Burke, who had died in the meantime, he obtained a decree against the administrator and heirs of Burke, for a conveyance by them. 3 Iowa, 76. After this decree, the plaintiff, as the widow of Ora M. Burke, applied to have her dower in this land set off to her.

A decree was rendered in her favor, from which the respondents appeal.

*James Grant,* for the appellants, relied upon *Fort* v. *Wilson,* 3 Iowa, 156; Hill on Trustees, 269; *Fisher* v. *Fields,* 10 Johns., 496; *Lawrence* v. *Miller,* 1 Sandf., 516; *Blain* v. *Harrison,* 11 Ill., 484.

*D. L. Shorey,* for the appellees, cited *Young* v. *Wolcott et al.,* 1 Iowa, 174; Coke on Littleton, 31, *a* note.

STOCKTON, J.—I. If there was any testimony going to show that Burke, in his lifetime, had parted with his interest in the land warrant, we should be inclined to hold, that after its location in his name, the plaintiff was not entitled, as his widow, to dower in the land. But there is no testimony on the subject. How the warrant came into the possession of Easton, is not shown. His possession of it, is not sufficient to show title to it, when the title did not pass by mere delivery. *Holland* v. *Hensley,* 4 Iowa, 222. Any presumption of property in Easton, arising from his possession, is rebutted by the fact of his afterwards taking a bond from Burke for a conveyance, on the payment of the $160. The judgment of the court, that the plaintiff was entitled to dower in the land, we think, was not erroneous.

II. It is claimed that the court erred in awarding to the plaintiff as her dower, one-third in value of this land, as her property in fee simple. Burke died January 16, 1853, at which time the plaintiff's right of dower accrued. By the act of January 24th, 1853, (Session Acts, 97), the provision of the Code which secured to the widow, in fee simple, at the death of her husband, one-third in value of his real estate, was repealed. The defendant's proposition is, that this repeal was without any saving clause; that the widow's dower, in this case, had not been assigned to her, and was not, consequently, a vested right; that until the right to dower becomes vested by assignment, there is no vested es-

tate in dower ; and that it being the creature of the statute, and not existing by contract, it may be changed by the legislature at any time before it is assigned.

We do not admit entirely the premises of the defendant, nor the conclusion he seeks to draw from them. The repealing act in this case, does not necessarily refer to, and include rights of dower accrued previous to its enactment. The rule of construction in such case, as fixed by the Code, provides that the repeal of a statute, does not affect any right which accrued under, or by the virtue of, the statute repealed. Section 26. The plaintiff's right of dower in the land, accrued at the death of her husband ; and the legislature could as well take away her right altogether, as reduce it from a fee simple to a life estate, after it had accrued.

Courts will give to statutes a prospective effect only, unless the language is so clear and imperative as not to admit of a doubt. The supreme court of the United States has said, that "every law that takes away or impairs rights vested, agreeably to existing laws, is retrospective ; and is generally unjust, and may be oppressive, and it is a good general rule, that a law should have no retrospect." *Calder* v. *Bull*, 3 Dallas, 386, 391.

It has been repeatedly decided, (says Mr. Sedgwick), that it is not competent, by any act of legislation, to divest a vested interest in real estate. Such acts are undoubtedly void for several reasons ; they take away private property without compensation ; they take away property without any process of law ; and they are not acts of a legislative character. Sedg. Const. & Stat. Law, 681.

Unless the power is considered by the court, as used for the benefit of the parties interested, vested interests are not deemed subject to legislative control. Joint tenancies have been turned into tenancies in common in Massachusetts, by a retrospective statute—the courts seeing no constitutional objection to the power of the legislature to alter the tenure, by substituting another tenure more beneficial to all the ten-

ants.   *Holbrook* v. *Finney*, 4 Mass., 566 ; *Miller* v. *Miller*, 16 Ib., 59 ; *Binghard* v. *Turner*, 12 Pick., 539.

It is difficult to define with exactness in all cases, what is a vested right, or to lay down a general rule which will describe with precision, the extent to which legislative interference with rights or interests in property, is permitted or prohibited.   Some vested rights are protected by the federal constitution ; others, by the general limitation of the law making power ; and by that limitation arising from the division of the powers of the government into executive, legislative, and judicial.   Under this division, the prohibition of retrospective acts, and the non-interference, so far as it is enforced, with vested rights, in cases which do not come within the prohibition of the positive clauses in our constitution, state or federal, in regard to private property and contracts, will be found to be summed up in the idea, that the legislature can *only make laws*, or legislative enactments, as contradistinguished from judicial sentences and decrees.   Sedg. on Stat. & Const. Law, 676.

Whether marriage is a contract embraced within the constitutional prohibition, or is a mere civil relation, entirely subject to the control of municipal law, is a vexed question, upon which different and conflicting decisions have been made.   In *Dartmouth College* v. *Woodward*, 4 Whart., 538, it is impliedly admitted by Chief Justice MARSHALL, and expressly asserted by Mr. Justice STORY, that the marriage contract is within the constitutional protection.   So, it has been held in Missouri, that marriage is a contract within the meaning of the constitution.   *State, use of Gentry* v. *Fry*, 4 Mo., 120 ; *Bryson* v. *Campbell*, 12 Missouri, 498.

In New York, it was said by the supreme court in *White* v. *White*, 5 Barbour, 474, that marriage was not a contract, in the strict common law sense of the term.   In *Lawrence* v. *Miller*, 2 Comstock, 250, it is said by SHANKLAND, J., that "as the widow's right to dower, is a right acquired by the marriage contract, and one of the benefits promised to her by the law of the contract, in consideration of her en-

tering into that relation, it comes fairly within the letter and spirit of the prohibitory clause of the constitution, as a contract which cannot be impaired by subsequent legislation." See, also, *Kelley* v. *Harrison*, 2 Johnson's Cases, 29; *Jackson* v. *Edwards*, 22 Wend., 498; *Holmes* v. *Holmes*, 4 Barbour, 296. So, also, in Florida, the marriage contract is considered within the protection of the constitution. *Ponder* v. *Graham*, 4 Florida, 23.

On the other hand, in Maine it has been held, that the clause of the constitution in regard to the obligation of contracts, does not relate, or apply to marriage. 16 Maine, 479. And in Kentucky, marriage is treated as an institution created by the public law, and subject to the public will. *Maguire* v. *Maguire*, 7 Dana, 184. According to Chancellor KENT, this is the true construction. 1 Kent's Com., 417.

It has been held in New York, that dower is not the result of a contract, but a positive institution of the state; and a law extinguishing the widow's right to dower during the husband's lifetime, does not infringe the provision of the federal constitution in regard to contracts. *Moore* v. *The Mayor*, &c., 4 Selden, 110.

Without considering, however, the question of the power of the legislature to change the law in relation to dower, during the husband's lifetime, we are clearly of opinion, that under the law as enacted by the Code, (section 1394), the plaintiff's in the real estate in question, at the death of her husband, had all the attributes of a vested right. It was a right to one-third of the land in fee simple. To admit the construction sought to be given to the repealing act of January 24, 1853, by the defendant, would be not merely to give the act in question a retrospective effect, when there is nothing to indicate that such was the object or intention of the legislature; but it would be to give it such effect for the purpose of taking away a vested right. Dower is, perhaps, of all others, the estate most favored in law and equity. 3 Brown's Ch., 264. A presumption of a

change in the law, to the prejudice of the widow, is not to be indulged.    GARDINER, J., in *Lawrence* v. *Miller*, 2 Comstock, 255.

In *Kelley* v. *Harrison*, 2 Johns. Cases, 29, the principle was established that by the marriage and seizin of the husband, the wife's right to dower became a vested right, and could not be impaired by the subsequent acts of the government.    And, of course, not by subsequent legislation. See, also, *Jackson* v. *Edwards*, 22 Wend., 498.    As the circumstances of the present case do not seem to require it, we do not wish to be understood as expressing any opinion on this point.

For the reasons indicated, we are of opinion that the repealing act of January 24, 1853, can have no such effect as to change the rights of the plaintiff in the real estate of her husband, as they stood under the act repealed, at the time of his death.

Judgment reversed.