WOLD & OLSON v. LAURA D. BERKHOLTZ, Defendant, and F. E. BARBER, Guardian, and CORA and BESSIE BERKHOLTZ, Interveners and Appellants.

**Desent and Distribution:** DOWER: *Election.* The inference of an election by a widow to retain the homestead for life instead of taking her distributive share under the statute. arising from her occupation of the homestead with her minor children as a home for more than ten years, is overcome by proof of a contrary election solemnly asserted in a suit for contribution instituted by the

guardian of the heirs and continually evidenced by leasing and demanding and receiving the rents of the distributive share and bearing its portion of the burden during all such time as to taxes and improvements.

**Application for Dower:** TIME FOR MAKING. A widow occupying a homestead for more than ten years after her husband's death is not precluded from asserting her right to dower, which she has elected to take in lieu of homestead, by Code of 1873, section 3369, which limits the time within which application for dower may be made to ten years; since the remedy therein provided is not exclusive.

*Appeal from Lyon District Court.*—HON. GEORGE W. WAKEFIELD and HON. JOHN F. OLIVER, Judges.

THURSDAY, MAY 12, 1898.

THESE three cases were submitted together, and on the same record. The first was tried before Hon. George W. Wakefield. Wold & Olson asked for judgment on account against Laura D. Stoltenberg, and the petition was aided by a writ of attachment levied upon the distributive share of the defendant in the estate of Herman Berkholtz, deceased, and rents thereon, duly garnished. In her answer defendant denies the indebtedness. Cora and Bessie Berkholtz and their guardian intervened, alleging that Mrs. Stoltenberg elected to take the homestead in lieu of her distributive share, and that the property attached belonged to them. Decree was entered in favor of the plaintiff for the sum of two hundred and twenty-three dollars and forty-one cents, and the court found Mrs. Stoltenberg did not elect to take the homestead, established a claim of forty-seven dollars for repairs made by guardian as a first lien, a judgment in favor of interveners as a second, and ordered the property sold subject thereto in satisfaction of plaintiff's judgment. The interveners appeal.— *Affirmed.*

*E. C. Roach* for appellants.

*McMillan & Dunlap* for appellees.

THE second action was begun by interveners in the first against Mrs. Stoltenberg to quiet title against her on the ground that she had elected to take the homestead, and was not entitled to any interest in the remaining property. This was consolidated with the third action, in which the interveners asked that G. W. Gleason, a judgment creditor of Mrs. Stoltenberg, and the sheriff be enjoined for the same reason from levying or enforcing an execution against the property. This cause was heard by Hon. John F. Oliver, and a decree entered granting the relief prayed. The defendants appeal.— *Reversed.*

*J. M. Parsons* for appellants.

*E. C. Roach* for appellees.

LADD, J.—The controlling question in each of the three cases is, did Laura D. Stoltenberg (formerly Berkholtz) elect to take the homestead in lieu of her distributive share in the estate of Herman Berkholtz, deceased? Berkholtz died June 11, 1894, seized of the south one-half, southeast one-fourth, southwest one-fourth, and the northeast one-fourth, southwest one-fourth, of section 33, in township 100 north, of range 45 west of fifth principal meriadin, and lots 1, 2, 3, and 4 in block No. 1, and lots 2, 3, 4, and 5 in block No. 2, of Berkholtz addition to the town of Rock Rapids. Situated on this property was a flouring mill, operated by water, and a valuable mill site, one tenement dwelling house, and also that occupied by the deceased and his family. The premises so occupied consisted of nearly two acres lying just north of block 2, and were inclosed

by a fence. The barn used in connection therewith stood adjoining the inclosed tract on the north, but was included in the plat and survey. Berkholtz left surviving him his widow, Laura D. Berkholtz, since intermarried with Thomas Stoltenberg; a son, W. E. Berkholtz; and two daughters, Cora and Bessie Berkholtz. W. E. Berkholtz, having arrived at the age of majority, conveyed all his interest in the estate to his sisters, April 21, 1894. Laura D. Berkholtz and her children continuously occupied the premises referred to, with one-half of the barn, as a homestead, up to June 23, 1894, when she married Stoltenberg and moved to Illinois. While the children resided with their mother, the guardian paid for their board, clothing, and the expenses of their education. The mill, with one-half of the barn, has been rented since the death of Berkholtz, written leases therefor being executed by the guardian and widow jointly. A portion of the land has been rented for pasture, and the tenement house leased to various persons. The widow has received one-third of the rent of the mill and other real estate; and one-third of the cost of repairs and improvements, and also of the taxes, has been paid by her, or charged to her by the guardian in his account with her. A small piece of land was condemned at one time for the public use, and she received one-third of the compensation. In 1887 the guardian brought an action against the widow to compel her to contribute one-third the cost of necessary repairs, alleging her ownership of one-third of the mill property. This was admitted by the widow in her answer, and judgment rendered against her for the amount claimed. She has never paid or been charged any rental for the use of the homestead. These facts are found in the stipulation of the parties, or are established by the undisputed evidence. They show, not only that Mrs. Stoltenberg did not intend to take the homestead in lieu of her

distrbutive share, but that the heirs and their guardian were so advised. She and they have acted throughout on the theory that the children were owners of two-thirds of the estate and the widow of one-third. The only circumstance indicating a contrary intention is the continuous occupancy of the homestead for a few days more than ten years. Unless this is treated as conclusive proof of an election, she is entitled to her distributive share.

The right to the distributive share is primary under the statute, and an election is necessary in order to retain the homestead for life. *Egbert v. Egbert*, 85 Iowa, 534; *Wilcox v. Wilcox*, 89 Iowa, 393; *Stephens v. Hay*, 98 Iowa, 37. Possession of the homestead for longer than a reasonable time within which to make an election after the lapse of one year, during which claims may be filed against the estate, without other evidence, may well be deemed an election to take it for life. But when, as in this case, it is occupied by the survivor and her minor children as a home even for more than ten years, the inference of an election is overcome by proof of a contrary election solemnly asserted in a suit for contribution, instituted by the guardian of such heirs, and continually evinced by leasing, and demanding and receiving the rents of the distributive share, and bearing its portion of the burdens during all this time. In *Conn v. Conn*, 58 Iowa, 747, relied on by interveners, the survivor was in possession over ten years, but it is there said: "The only thing which tends to evince that the occupancy of the homestead should not be regarded as an election is the execution of the mortgage, but this was not executed until more than ten years after the death of Robert Conn." The survivor in *McDonald v. McDonald*, 76 Iowa, 137, occupied the homestead for about five years, and though, at the end of three years, she had executed a mortgage on one-third of the estate, she was

held to have elected to take the homestead for life. In other words, the mere execution of a mortgage covering the distributive share will not overcome the presumption of an election to retain the homestead arising from long-continued possession. See, also, *Zwick v. Johns*, 89 Iowa, 550. After reviewing previous decisions, this conclusion is reached in *Egbert v. Egbert, supra:* "When the survivor has occupied after a reasonable time without having the distributive share set apart or otherwise making an election, the presumption of an election from the occupancy arises, and the rule applies; otherwise it does not." In *Wilcox v. Wilcox, supra*, the widow was held to have elected to take the distributive share, and this language is pertinent: "It does not follow from the language of those sections, nor the holdings thereunder, that an election may not be made to take the distributive share before it is actually set off. In the *Egbert Case*, as well as others, the thought is prominent that the right to the distributive share is primary, that the election should be as to the homstead, and that a right to the distributive share is only defeated when a homestead election is made; but, of course, there may be an act indicating an election to take the distributive share, and that is what is meant when the term is used, and not that such an election is necessary to secure it." The assertion by the widow of her ownership of a distributive share in the suit for contribution was a clear and unequivocal election on her part to take that instead of the homestead. It involved a liability which she could have avoided by taking the latter. Since then she has enjoyed the profits it might yield, and exercised such dominion over it as would be lawful by a tenant in common. The occupation of the homestead was not inconsistent with this claim of one-third of the estate. It was used by the children as well as by the widow for a home. As said in *Stephens v. Hay, supra:*

"It was natural, and to be expected, that she and the children would occupy the homestead together after the death of the husband and father." No one has been prejudiced by the delay in having her distributive share set apart. While the time within which she may do so under section 3369 of the Code has elapsed, the remedy there provided is not exclusive. *Starry v. Starry,* 21 Iowa, 254; *Thomas v. Thomas,* 73 Iowa, 657. As the defendant does not question the levy of the writs on her dower interest before assigned (*Rausch v. Moore,* 48 Iowa, 611), the interveners may not do so for her. The decree in the action brought by Wold & Olson is *affirmed,* and that in the cases consolidated is REVERSED.