MARY BOSWORTH et al., Appellants, v. JOHN M. BLAINE et al.,
Appellees.

**HOMESTEAD:** Surviving Spouse—Distributive Share or Homestead
—Presumption—Election to Overcome. On the question whether
a surviving spouse took (a) the absolute or distributive one-
third right or (b) the homestead occupancy right, the presump-
tion, in the absence of evidence, is that the survivor took the
former. Hence arises the necessity of showing an *election* to
take the homestead occupancy, in order to overthrow the presump-
tion. If continued occupancy is relied on to show such election,
it must be an occupancy not only consistent with this homestead
right, but an occupancy maintained under and because of such
right. *Held,* presumption not overthrown.

PRINCIPLE APPLIED: The husband had lived on the 116
acres in question with his wife, who owned the land, for some
twenty-four years before her death. After her death, a new house
was built, in which the husband continued to live with his minor
children. An older son lived in the old house and farmed the
place. All these buildings were on the same forty, which was
equal in value to one-third of the entire land. The father had
an arrangement with his children by which he received rent
which was applied first to his support and the balance on a two-
thousand-dollar mortgage on the land. Five years after his wife
died, he mortgaged his undivided one-third of the land. He re-
peatedly made efforts to sell the land, and, among other acts,
placed it in the hands of several real estate agents. He never
unequivocally asserted a homestead right in the land. Nine
years after the death of the wife, a judgment was rendered
against him, and levy was made on the land. *Held,* the evidence
failed to show an election to take the homestead right, and there-
fore the presumption that he took the distributive share must
prevail.

*Appeal from Linn District Court.*—HON. MILO P. SMITH,
Judge.

FRIDAY, MAY 14, 1915.

ADELIA COLEMAN died February 5, 1904, seized of 116
acres of land incumbered for $2,000. After her death her

surviving husband, N. R. Coleman, with his minor children, continued in occupancy. In 1913, defendant Blaine obtained judgment against Coleman and caused execution to issue and be levied on said land, and was about to sell the same when this action was begun, praying that said sale be enjoined, for that said Coleman had only a homestead interest therein. On hearing, the petition was dismissed. The plaintiff appeals.— *Affirmed.*

*Deacon, Good, Sargent & Spangler,* for appellants.

*Randall, Courtney & Harding,* for appellees.

LADD, J.—The defendant Blaine obtained a judgment for $434.00 against N. R. Coleman, October 2, 1913, and caused execution to be levied on 116 acres of land on which Coleman

1. HOMESTEAD: surviving spouse: distributive share or homestead: presumption: election to overcome.

had resided since 1880. It was in his wife's name. She died in 1904, and the only issue is whether subsequent thereto he elected to take a homestead in lieu of his distributive share. The 40 acres on which the buildings are located are quite as valuable, if not more valuable than a third of the whole. Shortly after the wife's death, a new house was erected on this 40 acres into which N. R. Coleman and his children, other than his son Leslie, moved; and Leslie with his family occupied the old house and has since conducted the farm, paying N. R. Coleman one-half of the grain raised as rent, and testified that "the rent he was to receive, after setting aside enough for his support, was to go upon the notes against the place. He was to get just what he needed."

The evidence leaves no doubt that the children expressed a willingness that Coleman should make use of the farm as long as he might live, any surplus over his living expenses to go to the payment of the debt against the farm, and such was their arrangement with him, and undoubtedly they anticipated inheriting the entire property. Indeed, Coleman testified, "We had such an arrangement and I have been living there

ever since. I have been living there ever since. I have been getting my support from there and whatever was left was paid upon the debts of the estate. The arrangement with the children was with regard to the whole farm."

In examination supplemental to execution, he testified that he claimed a homestead right in the land and an undivided one-third thereof and that he had so stated to his children. On his attention being directed to this, he testified that what he had stated was true, but on re-direct examination explained that when he gave this testimony he had not understood what was meant, that he always claimed his homestead only. He denied ever having stated to his children that he claimed the distributive share and testified farther:

"I offered the farm for sale as soon as my wife's death. If it was sold I was to get money enough to pay these notes. That is not the reason I offered it for sale. I couldn't farm any more. It had been up for sale years before these notes were made and I never withdrew it. It was for sale at a certain price. If anyone had offered that price it would have been sold by the heirs, I suppose. I didn't tell anybody that I had to consult with the heirs in order to sell it. It might have been listed in my name. I told them (agents) I claimed the right to sell it at that time. I believe I didn't consult with any of my children when I went to make arrangements to sell it."

He further testified that the homestead was all that he ever claimed, and that he never told anyone that he had a one-third interest in the land.

In 1909, he executed a mortgage to a Mrs. Hein on his undivided one-third of the land to secure an existing indebtedness. In 1910, he listed the farm for sale with one Cherry, giving him the exclusive right to sell during five months. He listed it for sale with Hunter in 1912, and during the same year with Leigh, telling him that if he "would get a move on

him'' and sell that he would pay a note Leigh then held against him.

Root testified that Coleman told him he owned a one-third interest in the farm and would pay the notes given for one-third interest in a business out of the proceeds of the farm as soon as sold. It is unnecessary to reconcile the testimony; for the evidence remains that Coleman had, with more or less persistency, at all times after the death of his wife, undertaken to find a purchaser for the land. This was inconsistent with any inference that might otherwise be drawn that he had elected, by continued occupancy of the premises, to claim the same as a homestead. Though reason for so doing does not seem very persuasive, this court has always regarded the right to a distributive share in an estate as the primary right of a surviving spouse. *Wold v. Berkholtz,* 105 Iowa 370; *McDonald v. Young,* 109 Iowa 704; *In re Lund Estate,* 107 Iowa 264, 267.

To retain a homestead in the premises, then, an election so to do by the survivor must be evidenced in some way. *Stephens v. Hay,* 98 Iowa 37; *Wilcox v. Wilcox,* 89 Iowa 388, 393; *Egbert v. Egbert,* 85 Iowa 525, 534. Ordinarily, such an election is evinced by the continued occupation of the premises as a homestead by a surviving spouse and family. Even this fact is not conclusive. *Gray v. Wright,* 142 Iowa 225, 227. And where such continued occupancy might as well be referred to a lease from the heirs, as in *Robson v. Lambertson,* 115 Iowa 366, or to an agreement or an arrangement between the heirs and surviving spouse, as in *Hemping v. Hemping,* 141 Iowa 535, as to the claim under the homestead right, there is no room for the inference of an election to claim as a homestead. The evidence does not unequivocally indicate that Coleman ever asserted a homestead right in the premises. Though he continued in possession, this, according to the evidence, was under an arrangement with his children that he should so do, and his efforts to sell, shortly after his wife's death and later on, were utterly inconsistent with an

intention to continue in possession, which was the only method by which he could enjoy and preserve the homestead right.

The record utterly fails to establish an election to take the homestead right in the premises in lieu of the distributive share, and as the latter was the primary right to which he is entitled, it cannot be said that he has waived the same for the other. The district court rightly so decided, and its decree dismissing the plaintiffs' petition is—*Affirmed.*

DEEMER, C. J., GAYNOR and SALINGER, JJ., concur.