In re Estate of William Caylor.

No. 39740.

October 15, 1929.

*Smith & More,* for appellant.

*H. E. Valentine,* for Alva Caylor, appellee.

*W. B. Hays,* for E. A. Caylor and A. W. Caylor, appellees.

DE GRAFF, J.—William Caylor died testate. The widow, Mattie Caylor, five children, and three grandchildren, who were children of a deceased daughter, survived him. The testator bequeathed to his wife a life estate in his property. The real estate consisted of 300 acres of land in Appanoose County, 140 acres in Wayne County, a dwelling and some vacant lots in Centerville, and a store building in Udell, Iowa. The real estate was free of incumbrance, except a mortgage of $5,000 on the Wayne County land, which mortgage was executed by William Caylor and Mattie, his wife.

Within six months from the date of the death of the decedent, the widow filed in said estate her written refusal to take under the will, and elected to take her distributive share, under the statute.

During the winter of 1927, an application to sell real estate (to pay the debts of the estate) was filed, and it is alleged in said application that the personal property was insufficient to pay the indebtedness owed by the estate. The prayer in said application was for an order authorizing and directing the executors to sell an undivided two thirds of all of the real estate described in the application, or as much of said undivided two thirds as might be necessary for the purpose of paying the debts of said estate and costs of administration, and to have appraisers appointed by the court, to appraise the described real estate. This application was signed by "H. E. Valentine, attorney for petitioners" (executors), and was verified by Alva Caylor, one of the executors. An order was entered in said estate, in which it was found and determined by the court that claims had been filed in the office of the clerk of said court against said estate, aggregating more than $13,000, and that the personal estate which came into the hands of said executors aggregates more than $13,000, but of that amount more than $10,000 is represented by the note of one Paul Caylor, and that it is impossible at this time to collect the amount due on said note, and that

there is no probability of collecting the amount due on said note within any reasonable time, if at all. It was further determined that it was necessary to sell all, or a part of, the undivided two thirds of the described real estate, for the purpose of paying the debts and charges against the estate; and authority was granted to the said executors, and they were directed to sell, at public or private sale, as might be for the best interests of all parties, an undivided two-thirds interest in and to the real estate involved, or as much of the said undivided two thirds as might be necessary to pay the debts and charges against the estate, reserving, however, an undivided one-third interest to said Mattie Caylor, the widow. It was further ordered that the undivided two-thirds interest of said estate be appraised, and appraisers appointed.

There was no homestead involved, and this opinion is based on the particular facts of this case.

On the 6th day of March, 1928, the widow, Mattie Caylor, procured a loan from one J. A. Bradley in the sum of $7,280.88, and as security therefor, executed a mortgage to him on her undivided four-ninths interest of said real estate, which included her one-third (distributive) share, plus a one-ninth interest which Mattie Caylor had purchased from Paul Caylor, one of the heirs. The money so secured was used to discharge an indebtedness owed to the First National Bank of Centerville and the Udell Savings Bank of Udell, which banks had filed claims against said estate, and owed by Paul Caylor, for which William Caylor, the deceased, was surety. This indebtedness was included in the application to sell real estate to pay debts, and upon payment aforesaid, the said claims were released, satisfied, and withdrawn. This left a balance of approximately $6,000 of unpaid indebtedness against the estate; but, subsequently to the filing of said application, there was an additional claim of $2,000 filed by one of the heirs, and the balance of the claim of the First National Bank, in the sum of $500.

In September, 1928, the application of the widow was filed, asking for the admeasurement of her distributive share in said land, and that referees be appointed to set off the same to her, and that certain designated particular property which she desired be included in the admeasurement.

It may be observed, in passing, that it is conceded by the

parties, and so determined by the court, that the widow is entitled to her distributive share in the real estate involved, but the admeasurement prayed for was refused, for the reason that she had permitted an order to be made for a sale by the executors of an undivided two thirds of the property, and had given the mortgage to which reference has heretofore been made. No part of the property has been sold, under said order.

Was the widow, under the circumstances, entitled to the admeasurement or assignment of her distributive share, or has she, by her acts and conduct, estopped herself to claim, at this time, the admeasurement of her one third in value of the real estate of which her husband died seized? It cannot be questioned that, prior to the order of sale and the execution of the mortgage by her, she was entitled to what she now claims. This is a matter of statute. Section 11990, Code of 1927. It is also a matter of statute that a widow, upon her application at any time within ten years from the date of the death of her husband, is entitled to have her distributive share admeasured, and commissioners shall be appointed for that purpose. Section 11994 *et seq.*, Code of 1927. We first inquire whether the right of the widow to have her distributive share admeasured is affected in any way by her giving a mortgage upon her distributive share prior to the foreclosure and sale under such mortgage. She was, as the court found, entitled to a distributive share in said real estate, and in the order entered to sell said land it is specifically recited ''that, by reason of the fact that the said Mattie Caylor elected to take under the law, that she is the owner of an undivided one-third interest in and to the above described real estate,'' and that, upon the sale of the undivided two thirds of said real estate by the executors, there shall be reserved ''an undivided one-third interest therein to said Mattie Caylor.'' It is quite apparent, therefore, that the distributive share of the widow in said land was in no way affected by reason of the entry of the order of sale. Obviously, this was reserved to her, and she still has her rights in said land as such widow. The recited reservation includes all the rights under the law pertaining thereto, among which is the right to have her one third admeasured and assigned to her. The executors, as well as the heirs, are presumed to know the rights of the widow in this particular.

The Bradley note and mortgage were sold and assigned by Bradley to E. A. and A. W. Caylor, legatees under the will of William Caylor, and these parties filed a resistance to the application of Mattie Caylor for the admeasurement of her distributive share. These legatees were in no manner misled by the allegations in said mortgage, or as to the property the said mortgage conveyed. These parties are also presumed to know, if they did not actually know, the legal rights of the widow in said lands. It is said in *Huston v. Seeley*, 27 Iowa 183, that, at law, the unassigned right of dower could not be the subject of a valid grant to a stranger, although it might even before assignment be released to the heir.

"But in equity, the right of a widow to sell and convey her dower interest, before assignment, has frequently been recognized, and the assignee may prosecute a suit for dower in her name, * * * if, not, indeed, under the Code, in his own name, as the real party in interest."

In *Herr v. Herr*, 90 Iowa 538, it is disclosed that the husband died seized of 140 acres of land. Under the terms of his will, he devised a life estate to his wife; but there is no evidence that she accepted the provisions of the will before her death, but she had occupied and used the land. During her life, she executed a mortgage on 60 acres of the land, and the validity of this mortgage was questioned in an action in partition. The opinion reads:

"It is further contended that the mortgage is void, because the widow had only a one-third interest in the mortgaged property. We do not think this claim ought to be sustained. It is true that a widow has no right to select her dower herself, but she is entitled to an undivided one third in fee, and she could make a valid disposition of her undivided interest without having it assigned, admeasured, or set off. * * * There can be no doubt that in equity a widow may sell and convey her dower interest before assignment, and the grantee may maintain an action for its assignment. * * * We think that, if Margaret Herr could have made a valid conveyance of her dower right in the land, she could incumber it by mortgage, and, if she could incumber the whole tract, the mortgage upon an undivided one third of any part of the real estate is valid."

This being the law of Iowa, how may it be said that the widow is prevented from having this done prior to the foreclosure and sale of the mortgage? Our statutory law abrogates the general doctrine of dower, and substitutes a new system, and makes the wife, in effect, a tenant in common of one third of all real estate in which the husband, at any time during the marriage, had a legal or equitable interest. See *Davis v. O'Ferrall,* 4 G. Greene 168; *Waterloo, C. F. & N. R. Co. v. Harris,* 180 Iowa 149.

There is more than one way to admeasure dower or the distributive share. It may be set off by the mutual consent of all parties in interest, or by referees, or in equity, or by partition. The point is that, from the time of the death of the husband, the right to have the distributive share of the widow set aside existed; and until that was done, her right or title to an undivided part of the land was present, but not definitely ascertained until one of the remedies mentioned was adopted. *Waterloo, C. F. & N. R. Co. v. Harris,* supra. The logical effect of the reasoning of the foregoing case and of the other decisions cited herein is that the execution of a mortgage by the widow on her undivided portion of the land was subject to admeasurement, or the ascertainment of her interest in the land and the segregation of that part given to her; and when so ascertained, the mortgage would cover that particular part. In the order, predicated on the application to sell the land, the court, as heretofore indicated, recognized this right, and reserved to her an undivided one third of the real estate. She has the absolute right to have the same admeasured within the statutory period, and she elected to have it done in probate by the appointment of commissioners to appraise and admeasure. This court must follow statutory provisions and the precedents heretofore made by this court. We discover no element of estoppel arising from the giving of the mortgage in question, or in the entering of the order to sell, or in the purchase of said mortgage by the two Caylors from the mortgagee Bradley. Everything is held *in statu quo,* and necessarily will remain so held until this opinion is filed.

Our conclusions on the disputed points are as follows: (1) The claim of the widow that her distributive share be so set off as to include certain specific tracts or parcels selected by

her (none of which constitute a homestead) has no merit. She has no right to dictate which particular tract or tracts shall be set off to her. (2) The widow is not entitled to a one-third interest in the Wayne County land, free and clear of the $5,000 mortgage thereon, but her distributive share in said land must bear its pro-rata amount of that liability. See *Thomas v. Hanson*, 44 Iowa 651. (3) The doctrine of waiver and of estoppel, which are distinguishable legal concepts, finds no support in the record of this case.

In the light of the answer made to the primary proposition advanced by the appellant for a reversal, we deem it unnecessary to enter into a discussion of the application to sell the real estate to pay debts, or of the validity of the order entered thereon. It follows that the cause must be, and it is,—*Reversed.*

ALBERT, C. J., and STEVENS, MORLING, and WAGNER, JJ., concur.