DORIS L. VAN VEEN, Appellee, v. EDITH VAN VEEN et al., Appellants.

No. 40719.

324

APRIL 10, 1931.

REHEARING DENIED OCTOBER 31, 1931.

B. W. Preston, for appellee.

W. H. Keating and McCoy & McCoy, for appellants.

ALBERT, J.—On the 11th day of April, 1926, Nick Van Veen died seized in fee of a tract of land in Mahaska county containing approximately 93 acres. At the time of his death, there was an outstanding mortgage on said land in favor of J. H. Schultz, with a balance due thereon of $4,300.00 and some interest. He left surviving him the defendant herein, Edith Van Veen, his widow, and his children, Doris L. Van Veen, the plaintiff herein, Floyd and Ruth Van Veen. By due proceedings, Hein Van Veen was appointed administrator and qualified on April 15, 1926.

On the 16th day of September, 1929, the plaintiff and appellee herein, filed a petition in the district court of Mahaska county, Iowa, seeking a partition of this land, claiming that the widow, Edith, was entitled to an undivided one-third thereof and the plaintiff and the defendants, Floyd and Ruth, were each entitled to an undivided two-ninths. Plaintiff, by way of amendment to her petition, asked that Edith be required to account for rent on said property from the year 1926 to 1929 inclusive.

The widow, Edith Van Veen, claims first, that she received $1,700.00 from the estate of her parents which she invested in improvements on the land in controversy by way of tiling, buildings and repairs, etc. She claims further that she is entitled to the value of one-third of said real estate to be set off in kind to her so as to include the buildings thereon, and is entitled to do this as between her and the children, free from the mortgage indebtedness.

The court allowed the widow nothing on her claim of $1,-700.00, holding that on account of the peculiar conditions existing in the case, the share of the widow could not be set off in kind so as to include the buildings, and ordered all of the land sold by the referee. He charged the widow rent for the shares of the children, deducting certain taxes and other expenditures, making a net charge against her therefor of $1,392.36; and ordered that after the payment of costs and expenses of the litigation, the referee, from the proceeds derived from such sale, should pay to the widow one-third thereof, less $1,392.36, the balance to be divided among the children, but the mortgage indebtedness was to be paid from the children's share.

All defendants joined in the appeal.

To a fair understanding of the case, a few of the salient

facts are necessary: Nick Van Veen owned and he and his family were living upon this farm as their homestead at the time of his death. All indebtedness of the estate, except the mortgage, has been taken care of. After his death, his widow and children continued to occupy and use said farm up until the time of this litigation. By arrangement between the widow and Hein Van Veen, her brother-in-law, he was employed by her to look after this farm. The evidence shows that during all of these years, the farm was conducted under Hein's supervision, crops were raised and sold, stock was bought and sold, and the family lived and the children were clothed and educated from the proceeds of said farm.

II. The first question urged on behalf of the widow is that she should not be charged with rent for the shares of the children during the time in controversy.

We are cited to numerous cases in this jurisdiction and others holding that as between tenants in common, in the absence of an agreement, when one tenant in common occupies the premises not as a disseisor, he is not required to respond by way of rent to his cotenants. But at this point we are confronted with the question of whether the mother and children were tenants in common.

In Burke v. Barron, 8 Iowa 132, the widow brought action to admeasure dower. The husband died January 16, 1853. The legislature, on January 24th, repealed the law theretofore existing giving to the surviving widow in fee simple one-third in value of the real estate. The defense was there being no reservation in the repealing statute and her dower being not assigned, there was no vested estate in her. The court said:

"We are clearly of opinion, that under the law as enacted by the Code (Section 1394), the plaintiff's in the real estate in question, at the death of her husband, had all the attributes of a vested right. It was a right to one-third of the land in fee simple," and it was held this right could not be taken away from her by the repealing statute.

In Potter v. Worley, 57 Iowa 66, the action was in partition. John Worley died December 14, 1864, leaving a will giving all property to his wife during her natural life and on her death it was to be divided between his brothers and sisters. The

surviving wife took possession of all of the property; both real and personal, and used and controlled the same as her own until her death in 1877. Plaintiffs, being the heirs of the wife, claim that on the death of the husband she became the owner of a one-third of the real estate in fee simple. Mrs. Worley did not object to the will or relinquish her rights thereunder, and did not have a one-third interest set apart during her lifetime. It was held there was no inconsistency between taking dower and taking under the will. On a rehearing in the case we said:

"As the dower in the case at bar was one-third in fee simple, it vested in the widow immediately upon the death of her husband without action on her part."

In Blair v. Wilson, 57 Iowa 177, the question was whether the conduct of the wife, after the death of the husband, amounted to an election to take the homestead. No dower had been admeasured at the time of the death of the wife. She had remarried and her last husband, who survived her, claimed a dower in her dower interest in the lands of her former husband. The former husband deeded her a life estate in 80 acres of land, including the homestead. We there said:

"As the life estate in the eighty acres was not inconsistent with the right of dower, such right accrued at once upon the death of the husband. The legal title to one-third of the real estate vested immediately in the widow, and descended to her heirs, unless she was in some manner divested of it during her lifetime."

In Herr v. Herr, 90 Iowa 538, the action was in partition and to cancel the mortgage given by the surviving spouse after the death of her husband. We said:

"It is true that a widow has no right to select her dower herself. But she is entitled to an undivided one third in fee, and she could make a valid disposition of her undivided interest without having it assigned, admeasured, or set off. See Larkin v. McManus, 81 Iowa 723. * * * There can be no doubt that in equity a widow may sell and convey her dower interest before assignment, and the grantee may maintain an action for its assignment. Huston v. Seeley, 27 Iowa 183. We think that, if Margaret Herr could have made a valid conveyance of her dower

right in the land, she could incumber it by mortgage, and, if she could incumber the whole tract, the mortgage upon an undivided one third of any part of the real estate is valid.''

In In re Estate of Proctor, 103 Iowa 232, the action was to admeasure dower. There was a will giving to the wife (after the payment of debts and funeral expenses) all the rest, residue and remainder of the estate to have and to hold during her life, with full power to sell, transfer as much as might be needed for her support, and cancellation of indebtedness now or thereafter existing, with a remainder over to his son. The will did not provide that the gift to the wife was in lieu of dower. It was held there was no inconsistency between the wife's taking her dower and the rights under the provisions of the will. We said:

''The distributive share of the widow vested in her immediately upon the death of her husband, qualified by her right of election to take under the will, and to the rights of creditors * * * there (was) * * * no election by the widow to divest her in whole or in part of the distributive share that vested in her immediately upon the death of her husband. Being seized of the right to her distributive share in her husband's estate at her death, that right passed to her heirs immediately upon her decease.''

In Sawyer v. Biggart, 114 Iowa 489, suit was for the assignment of dower. We there said:

''The plaintiff's dower interest vested in her on the death of her husband, and she then became owner *eo instante* of an undivided one-third of all his real estate in fee simple,'' citing cases.

Piekenbrock & Sons v. Knoer, 136 Iowa 534, was an action in the nature of a creditor's bill. Mary A. Knoer died intestate on October 9, 1900, leaving her husband, J. J., and six minor children as her heirs-at-law. She died possessed of 120 acres of land. Her surviving husband continued to live upon the land and made no election between a distributive share and a homestead. After the commencement of this action, he elected to take the homestead right. The claim was that this election was fraudulent as against the creditors, and they asked that the dis-

tributive share be set aside as subject to the payment of plaintiff's judgment. The court said:

"But it is not correct to say that, immediately upon the death of the wife, the surviving husband became vested by operation of law with an absolute title to a one-third interest in the land of which she dies seized. He does become vested with a right to choose whether he will take such share, or in lieu thereof will claim and hold a homestead right in the property, and when such choice is made it doubtless relates back to the date of the death of his wife. * * * The surviving husband, as we have already said, does become vested with a right in the land of which his wife dies seized; but it is a right to exercise an option or choice between two very different estates or interests, or rights in such property. The choice is personal to him."

In Swartz v. Andrews, 137 Iowa 261, Swartz was the grantee in a warranty deed signed by N. B. Buxton, signed by him as attorney in fact for his wife. This deed was the ordinary form of warranty deed and released dower. It was held that the power of attorney was invalid and Buxton had no authority to relinquish his wife's right of dower. Buxton died intestate and his surviving wife deeded an undivided one-third interest in the property to the defendant. There was a curative act with reference to power of attorney which was held to be ineffective, and we said:

"On the death of Buxton, which took place before the passage of the curative act, his widow became vested with an absolute right to an undivided one-third interest in his real property which had not been relinquished by any action on her part valid by the law up to that time. Her contingent right of dower was converted into a title of which the legislature had no power to deprive her by any subsequent enactment."

In Robertson v. Schard, 142 Iowa, 500, the question was whether or not the creditors of the surviving spouse could control the right of the spouse as to her election between the provisions of the will and her statutory rights. The court said:

"It is not correct to say that upon the death of the wife title to a one-third interest in her estate vests, *eo instante,* in the

surviving husband. * * * The right which he becomes vested with is the right of choice between what the law offers him and the increased or other benefits offered him by the will. The choice is to be made by him, and not by his creditors.''

In In re Estate of Smith, 165 Iowa 614, it was held that on the death of Smith, his wife dying a few weeks later, within six months after the testator, without electing to take under the will, and, therefore, it must be held to have taken one-third of the estate.

In Bosworth v. Blaine, 170 Iowa 296, Adelia Coleman died February 5, 1904, seized of 116 acres of land, and after her death her surviving husband and minor children continued in the occupancy thereof. One Blaine obtained a judgment against Coleman, issued execution, and levied on said land. The prayer was for an injunction enjoining the sale of the same on the ground that Coleman had only a homestead interest therein. The fact side involved the question of whether or not the conduct of Coleman amounted on his part to an election to take the homestead. The court held it did not and the right to the distributive share was the primary right to which he was entitled, and the petition for injunction was dismissed. That the right to the distributive share is a primary right, see Wold & Olson v. Berkholtz, 105 Iowa 370; McDonald v. Young, 109 Iowa 704; In re Lund's Estate, 107 Iowa 264, 267.

In Watrous v. Watrous, 180 Iowa 884, Mrs. Watrous died with a will which did not mention her husband, and the husband, C. L., made no election to take the distributive share. Sophia G. Watrous died April 30, 1914. The probate of her will was contested by a son. A written contract was then entered into between the surviving husband and the contestant of the will by which an $1,800.00 annual annuity was agreed upon in favor of the contestant, and the will contest was withdrawn. C. L. Watrous agreed that the annuity should be a lien on his individual interest and upon the income and proceeds of the sale of his interest in the estate of his deceased wife. This was under date June 21, 1914. On November 8, 1914, notice was served on Charles L. requiring him to elect whether he would accept under the will, and on that date he filed an election to accept and be bound by the terms of the will. It was contended that the husband became seized immediately upon the death of

the testatrix of an undivided one-third interest in her real estate, and at the time of the execution of the contract he had a perfect right to encumber the same, and the subsequent written election did not affect the lien for the annuity created by the agreement. The opinion cites the Piekenbrock case, 136 Iowa 534, and the Robertson case, 142 Iowa 500, and then said:

"Several cases are cited by appellants to sustain their contention that title vested in Charles L. immediately upon the death of his wife, among which cases are In re Estate of Smith, 165 Iowa 614, and Bosworth v. Blaine, 170 Iowa 296. In the former of the above cases, the language used was to state the concession of counsel, whereas in the latter, the question under discussion related to a claimed election to take the homestead, under section 3377, and the question as to whether the title vested in the survivor was not involved. The remaining cases cited are not in conflict with our conclusion, and need not be further considered. In Waterloo, C. F. & N. R. Co. v. Harris, 180 Iowa 149, the above cases are cited as holding that the wife's title vests upon the death of her husband, but the citation is without discussion or distinction, and the point here being considered was not before the court. The settled rule of the state is undoubtedly that expressed in Robertson v. Schard, supra, and Piekenbrock & Sons v. Knoer, supra. Following the holding of these cases, it is our conclusion that the election of November 18th related back to the date of the wife's death, and the attempt to create a lien upon or the payment of an annuity out of her estate failed, and the court rightly cancelled the pretended lien * * *."

In Waterloo C. F. & N. R. Co. v. Harris, 180 Iowa 149, the action was for a specific performance of the contract. The claim was that the defendant had title because her husband died intestate, and thereupon she became invested with a fee simple title to an undivided one-third of the real estate of which he died seized. We there said:

"We have expressly held that, before admeasurement of the widow's distributive share, and before she may have elected under other statutes to take a life estate in lieu of dower, she may encumber her interest in the real estate by mortgage. * * * (Citing Iowa cases.) Again, in Larkin v. McManus, 81 Iowa

723, and Huston v. Seeley, 27 Iowa 183, it was expressly held that she might sell her one-third interest before assignment, and that the purchaser might enforce his contract. We have also held, however, that, until assigned, it is not subject to execution or attachment. Rausch v. Moore, 48 Iowa 611; Brightman v. Morgan, 111 Iowa 481; Getchell v. McGuire, 70 Iowa 71. * * * But upon her death before admeasurement, her share passes ·to her heirs as other real estate owned by her. * * * And it is such an interest .that it may be recovered in a real action. Rice v. Nelson, 27 Iowa 148; Huston v. Seeley, supra. In more recent cases, it is held that the widow's title vests upon the death of her husband. In re Estate of Proctor, supra; Bosworth v. Blaine, 170 Iowa 296; In re Estate of Smith, 165 Iowa 614.'' Further in the case we said: ''If the widow has such an interest in the estate of her husband that she may sell, convey or encumber it before it is admeasured, may she sell a part of it or create an easement in the lands which will be binding upon her and the other heirs, so that, upon admeasurement of her dower, or upon partition, * * * the part so sold, or over which an easement has been created, will be recognized and enforced against the other owners of the land? At best, the widow in this case was a tenant in common with her son, owning an undivided one-third of the land.''

· In Leighton v. Leighton, 193 Iowa 1299, the widow rejected the will and elected to take under the law. We there said:

''When the election is made, she takes her distributive share in the estate of her deceased husband, and is entitled to one third in value of the real property and one third in value of the personal property, after payment of debts and expenses of administration.''

In In re Noble Estate, 194 Iowa 733, in discussing the widow's share under similar circumstances, we said:

''In this case, the widow renounced the will, and elected of record to take her distributive share in the estate of said decedent. This gave her a one-third interest therein.''

In In re Estate of Caylor, 208 Iowa 1208, the action was for admeasurement of dower. It was held that the spouse had

such an interest that she could encumber by mortgage. We there said:

"Our statutory law abrogates the general doctrine of dower, and substitutes a new system, and makes the wife, in effect, a tenant in common of one third of all real estate in which the husband, at any time during the marriage, had a legal or equitable interest."

It will be observed from this lengthy review of our cases touching this question that under some circumstances we have held that the taking of a distributive share creates in the surviving spouse a vested interest in the property; in other cases, under other circumstances, we have held that the inchoate right of dower becomes absolute as a vested right, but no estate in the land itself is created until the dower is admeasured. To the end that this apparent conflict on this proposition may be cleared up and a definite rule fixed, it is our holding that on the death of the husband, the surviving wife becomes immediately vested with an interest and estate in the property itself before dower is admeasured. Of course, this interest is defeasible because she has a right, under certain circumstances, to elect to take under the provisions of the husband's will, (where there is one) or under the statute, she has a right to take the homestead for life; in either of which events she waives her dower estate in the property.

Having reached the conclusion that the surviving wife here had a vested interest in the property itself, she is here asserting that right. Where a mother, as in this case, is asserting her dower right,—which right no one disputes,—the question is: What is the relation between this mother and her children with reference to the land in controversy?

The status of the land at this point therefore is that the mother is entitled to a one-third interest therein in fee, and the children are the owners of a two-thirds interest in fee.

Black's Law Dictionary defines a tenancy in common to be where "tenants in common are * * * such as hold * * * by several and distinct titles, but by unity of possession, because none knows his own severalty, and therefore, they all occupy promiscuously. 2 Bl. Comm. 191."

4 Bacon's Abr. (7th Ed.) 454, says: "Those that come to the land by several titles, or by one title and several rights."

3 Bouvier Law Dictionary (Rawle's 3d Rev.) 3254 defines it as "such as hold by several and distinct titles, but by unity of possession."

In a tenancy in common the quality of their estates may be different, the shares may be unequal and the mode of acquiring title may be unlike. The only real unity between them is that of possession.

The situation presents every fact necessary to create the relation between the mother and children of tenants in common. Under similar circumstances, we have recognized this relation as tenants in common. See In re Estate Caylor, 208 Iowa 1208, l. c. 1213; Waterloo, C. F. & N. R. Co. v. Harris, 180 Iowa 149, l. c. 154.

■ Having concluded therefore under the circumstances of this case that the mother and children were tenants in common, we approach the question as to whether or not the mother is chargeable with rent for this property for four years in controversy. It is to be remembered that this land was not rented to strangers with the mother collecting the rent, but the mother and children lived on the farm, farmed the same, and all received their support and maintenance from the proceeds thereof.

In a case where a co-tenant leases land to others and collects the rents therefor, he is bound to account to his co-tenants for their share of the rent so collected. Belknap v. Belknap, 77 Iowa 71; German v. Heath, 139 Iowa 52; Sagen v. Gudmanson, 164 Iowa 440; Stevens v. Pels, 191 Iowa 176.

Where one co-tenant disseizes others, rent is chargeable against the disseizor whether he actually receives the rent or not. Sears v. Sellew, 28 Iowa 501; Austin v. Barrett, 44 Iowa 488; Boggs v. Douglass, 105 Iowa 344; Dodge v. Davis, 85 Iowa 77; Leach v. Hall, 95 Iowa 611; Rippe v. Badger, 125 Iowa 725; Parkhill v. Doggett, 142 Iowa 534.

But when the co-tenant does not disseize his co-tenants, and does not lease the land to strangers or collect the rent, he is not liable to pay rent to his co-tenants who do not share the use of the premises. Reynolds v. Wilmeth, 45 Iowa 693; Janes v.

Brown, 48 Iowa 568; Belknap v. Belknap, 77 Iowa 71; Van Ormer v. Harley, 102 Iowa 150.

This latter rule, however, is modified by Chapter 27 of the Acts of the 37th G. A., reading as follows:

"That in all cases in which any real estate is now or shall be hereafter held by two or more persons as tenants in common, and one or more of said tenants shall have been or shall hereafter be in possession of said real estate, it shall be lawful for any one or more of said tenants in common, not in possession, to sue for and recover from such tenants in possession his or their proportionate part of the rental value of said real estate for the time, not exceeding a period of five years, such real estate shall have been in possession as aforesaid; and in case of partition of such real estate held in common as aforesaid, the parties in possession shall have deducted from their distributive shares of said real estate the rental value thereof to which their co-tenants are entitled."

None of these rules, however, seem particularly applicable to the case at bar because in this case, as stated above, the land was not leased, no rents were collected from strangers, and all of the co-tenants occupied and enjoyed the premises in controversy and received their support and maintenance therefrom. There is, therefore, no question of one co-tenant occupying the premises, or a case of disseizin; under such circumstances where all enjoyed the property and the proceeds therefrom, we know of no reason why any one should be called upon to pay rent.

The next contention of the widow is that she should have an allowance growing out of the following facts: She received from her parents' estate about $1,700.00. She claims this was put into the fund from which the expenses of taxes, repairs on the property, and tiling of the land, also interest on the mortgage, were paid. The court credited her with two-thirds of the interest and taxes, but allowed her nothing for the repairs on the property and the tiling of the land, and of this she now complains.

It is the general rule that a tenant in common is entitled to contribution from his co-tenants for expenditures absolutely necessary for the benefit and preservation of the common property. This right is even extended to charge the co-tenant with a

just proportion of reasonable expenses necessarily incurred, fairly and in good faith, for the benefit of common property or such as were very necessarily dispensed for the common estate. Sullivan v. Brennan, 94 Iowa 743; 38 Cyc. 54. Under this rule, the mother would be entitled to credit or contributions from the shares of the children for expenditures absolutely necessary to the benefit and preservation of the common property. This, of course, of necessity, included taxes and interest on the mortgage for which the court gave her credit in the amount of $1,007.64 which we find to be correct. He allowed her nothing for repairs on the property or for the tiling. Just what amount she expended for repairs is a difficult proposition to determine. We have before us a report and some testimony referring to some items, but so far as we are able to determine, there was expended for repairs, aside from the tiling, the sum of $685.48 and the share thereof which should be paid by the children is $457.00. This, added to the $1,007.64, amounts to $1,464.64 with which the widow should be credited.

 The record shows that there were approximately 93 acres of land, and there seems to be a little dispute as to the reasonable value thereof, which is found to be $200 an acre, making the total value of the tract $18,600.00. One-third thereof, the widow's share, is $6,200.00. She complains that the court should have complied with her request to have her one-third set off in kind.

One-third of the value of the land is $6,200.00, plus the claim against the children of $1,464.64, makes a total of $7,-664.64, representing her interest in the property. The evidence shows that the house and other farm buildings are situated in the corner of the property on about two acres of ground. The evidence in respect to these values is somewhat hazy and indefinite, one witness testifying that the two acres and the buildings are worth about $13,000.00, while another witness testified that the buildings are worth about $7,500.00. If we take into consideration the value placed upon this property by the other witness, we have a value much in excess thereof. From the evidence we must conclude that the value of these two acres of ground, plus the buildings thereon, was in substantial excess of the interest of the widow therein. This being true, her claim that she should have her one-third in value of the property set

off so as to include these two acres and the buildings thereon can not be sustained.

By reference to Section 11992, Code, 1927, it will be noted that the distributive share of the survivor shall be set off so as to include the ordinary dwelling house given by law to the homestead, or so much thereof as will be equal to the share allotted to her by the second preceding section, etc.

It is apparent, therefore, that it will be impossible to comply with her request, and equity can not be called upon to do the impossible. We hold, therefore, the court was right in ordering the sale of this property and providing for the distribution of the proceeds thereof.

The next question urged is that it is insisted that in the admeasurement of her dower, the widow was entitled to take her one-third free from the husband's debts. We find on investigation of the record that at the time of the death of the husband there existed against said land a mortgage of $5,000.00 on which the sum of $700.00 had been paid on the principal. We do not have the mortgage before us and a copy of it is not set out in the record. All that is said is that this mortgage was signed by both the husband and the wife. The note, however, accompanying the same is set out in the record and it is a joint note signed by both husband and wife and is worded "we promise to pay." So far then as we are able to determine from the record, the debt represented by the note was as much a debt of the wife as of the husband. We cannot say, therefore, that she is entitled to take her one-third free from the indebtedness represented by this mortgage and note.

We feel that the court was right in not allowing the widow anything on her claim for the tiling of the land.

After this decree of partition was entered by the district court, the holder of the real estate mortgage, hereinbefore referred to, started foreclosure thereof, and in that proceeding McCoy & McCoy appeared as attorneys for the plaintiff. The court made an order consolidating the foreclosure case with the partition case, and in the foreclosure case made an order that execution would be stayed, the apparent thought being that regardless of the final determination in the partition case, the mortgagee had abundant security, and that the estate ought not to be sacrificed by permitting the execution on foreclosure before

the partition case was finally disposed of. To this consolidation serious objection was made because the foreclosure was started long after the decree in partition was entered. McCoy & McCoy, with W. H. Keating, appeared as attorneys for the defendant in the partition suit, and McCoy & McCoy alone appeared as attorneys for the plaintiff in the foreclosure case. A plea in abatement was made in the foreclosure case, and strenuous objection was made to their appearance for the plaintiff in the foreclosure case because it is claimed that by so allowing them to appear they were attempting to represent both sides of the lawsuit. This contention was overruled, and from this ruling an appeal was taken herein.

In the first place, the record does not sustain this plea in abatement or objection to the attorneys appearing for the plaintiff in the foreclosure case, and in the second place, Edith Van Veen, the widow, was the party for whom McCoy & McCoy appeared in the partition case and the objection made and the plea of abatement filed herein were not made by her. She being the real party in interest and the party for whom it is claimed these attorneys appeared for and against in the same lawsuit, she is the only party who could make such complaint, and so long as she does not complain, no one else can. There is nothing, therefore, in the appeal so far as this appellant is concerned. In relation to this matter the case is affirmed.

As to the matters involved in the partition case, the original decree will be modified in accordance herewith, and the case remanded to the district court for decree accordingly.—Modified in part; affirmed in part.

All Justices concur except DE GRAFF, J., and WAGNER, J., not participating.

SUPPLEMENTAL OPINION ON PETITION FOR REHEARING.

One error crept into the original opinion as to the statement of facts with reference to the mortgage. We said therein: ''We do not have the mortgage before us, and a copy of it is not set out in the record. All that is said is that this mortgage was signed by both the husband and the wife.'' We find on further investigation, however, that this statement is inaccurate; that the mortgage was set out in full in the record, but this error

has no effect on the final result because the holding in the opinion (wherein we refused her the right to take her one-third free from the mortgage indebtedness) was written on the assumption that the mortgage corresponded with the notes and was a joint obligation of both the husband and the wife.

There were three appeals in this matter and two consolidated cases. The first case was an action in partition in which there was filed a cross-petition. The second case involved the foreclosure of a mortgage. In the partition case, the defendants appeal and in that case the plaintiffs filed a cross-appeal on one question, namely, whether the widow had a right to take her one-third free from the mortgage.

As to this cross-appeal, the holding of the opinion is that the decree of the court with reference thereto is reversed.

As to plaintiffs' appeal in the foreclosure case, the holding of the opinion is that the decree of the district court is affirmed.

This record, consisting of 300 printed pages, has been very confusing by reason of the consolidation and method of argument. On plaintiffs' appeal, the district court's holding on the question of rent is reversed.

As to the advancement and repairs, the holding is modified and affirmed, and as to the ruling on the motion to vacate the appearance of the attorneys in the foreclosure case, the ruling of the district court is affirmed.

The petitions for rehearing are overruled.

The costs on this appeal are divided half and half between the appellants and the appellees.